## BROWN VS. BROWN.

Where an account against a party is delivered to him, and he examines it carefully, and makes no objection to it, or any thing contained in it, it amounts to an indirect admission of the debt—acquiescence or silence, when a demand is made, is equivalent to an admission.

*Appeal from the Circuit Court of Johnson County.*

Hon. WILLIAM H. FEILD, Circuit Judge.

WALKER & GREEN, for appellant.

ENGLISH, for appellee.

Hon. THOMAS JOHNSON, Special Judge, delivered the opinion of the Court.

This case comes up on a motion for a new trial, and the verdict is assailed upon several grounds: the first of which is, that it is contrary to the evidence. To authorize a new trial upon this ground of objection, the verdict must have been against the weight of evidence: so much so that on the first blush of it, it should shock our sense of justice and right. See *Howell vs. Webb*, 2 *Ark. Rep.* 364, and numerous other cases subsequently decided. In order to determine correctly the question raised by this objection, it will become necessary to look into the testimony, and to see upon which side the scale preponderates. That there was evidence before the jury, legitimate and competent to establish the demand of the appellee, unless successfully overturned by the proof on the other side, there can be no doubt. It is in proof,

that the account sued upon was exhibited to the appellant, that after having heard it read, he took it and examined it carefully, and made no objection to the correctness of it, or to any item contained in it. This amounted to an indirect admission of the debt claimed by the appellant. An admission may be presumed, not only from the declaration of a party, but even from his acquiescence or silence. As for instance, where the existence of the debt, or of the particular right has been asserted in his presence, and he has not contradicted it. But it is objected, and argued with much force and ingenuity, that the item for money advanced, is improperly included in the account, because, as it is contended, it was not loaned to the appellant, but to another and different party. We think that this position is not tenable, or at least that the jury were fully warranted in finding otherwise, upon the whole testimony introduced before them.

Robert Houston, whose deposition was first read, testified substantially, that he resided with the appellee, as a clerk in his store, nearly two years, commencing with the early part of 1849, and ending in the spring 1851, with the exception of about seven months in 1850; that during that time, the appellant kept an open account with the appellee; that appellant frequently bought articles himself, and that one Isaac Brown frequently bought articles, and had them charged to appellant; that during that time, a settlement took place between the appellee and appellant, at which time the appellant paid for all articles charged against him, and which had been purchased by said Isaac; that Isaac never had any account kept against him with the appellee, but that all the transactions he made were in the name of the appellant. He further stated, that about the first of January, 1851, the appellant, said Isaac Brown, and one Young, came to the house of appellee, and that when the said Isaac, and the appellant were both together in conversation with the appellee, either the one or the other, and which of the two it was, he could not then recollect, said he had bought Young's place, and wanted four hundred dollars to pay him, and proposed to appellant, that if he would advance him that sum of

money, that he would deliver his cotton at his gin, let him gin, bale, and ship it, and pay himself out of the proceeds of the cotton; that they, or one of them, said that they were unwilling to take the price of cotton there, and would risk the market. That the appellee then advanced the sum of two hundred dollars, which was charged to the appellant on the appellee's books, in the presence of the appellant, and that appellee agreed to advance two hundred more at some other time.

Levi Macon, another witness, also testified that in a conversation with the appellant, he said that he had been over to appellee's store to have a settlement, and that the cotton had fallen short of the four hundred dollars paid to James Young, and his account for 1850, and that he would have to try and raise the money to pay him; and he also stated, at the same time, that his store account for 1851, when added, would leave him behind over $100.

James Brown, the next witness introduced by the appellee, testified, that about the first of December, 1851, the appellant came to appellee's store, in company with Enoch Wood, and called for his account, when the account sued upon was produced by the appellee, and the appellant, after having heard it read over, took it and examined it carefully himself, that he made no objection to the correctness of it, nor to any item contained in it. He also stated, that in the course of a conversation between Enoch Wood, appellee, and appellant, respecting the price Wood claimed for his cotton, appellant said to Wood: "You ought not to complain of losing on so small an amount, when I have to lose on my cotton," alluding to the cotton credited to him in the account sued upon in this case. And on cross-examination, he stated that the accounts on file, and marked B and C, are in the hand writing of the appellee, and that the items contained in them are the same, or are intended to be the same, as those contained in the account sued upon, with the exception of the money and the cotton.

James Allen, the last witness introduced by the appellee, testified, that after the delivery of the cotton credited in the account sued upon, at the appellee's gin, it was ginned and put away in

the lint-room, and covered over with plank, for want of bagging and rope to bale it; that appellant and Isaac Brown came to the gin, and stated that it was to be baled out to itself, and that they expressed dissatisfaction, saying that they feared the dust from the other cotton would get upon it.

This is the substance of the testimony offered by the appellee. The appellant then produced, and read in evidence to the jury, the two accounts marked B and C, referred to in the testimony of James Brown. He then introduced as a witness, Enoch Wood, who testified, that about the last of December, 1850, Isaac Brown applied to him for his crop of cotton to enable him to obtain an advance upon it from the appellee, so that he might pay one Young for a tract of land that he had bought of him. That he agreed to let him have all his crop, except two loads, and it was agreed between them that he, Isaac Brown, should pay him $2 per one hundred pounds, for the cotton; and, further, that he, Wood, should be entitled to whatever the cotton should bring in New Orleans over and above that sum. That he, witness, delivered two loads of cotton of his own at appellee's gin, in pursuance of a previous arrangement with appellee, and that Isaac Brown got and hauled to the same gin the residue of his crop of cotton, amounting to about 5000 pounds, for which he, the said Isaac, afterwards paid him. That after he heard that appellee had got a return of sales in New Orleans, he and appellant went to appellee's store on Little Piney, that appellant wanted to settle his account, and that when appellee produced his account, a dispute arose between them about the money charged in the account, that appellant said he was willing to pay his store account, that he had nothing to do with Isaac Brown's contracts, and denied that he ever had anything to do with the money advanced by appellee to Isaac Brown; that appellant said to appellee: "I came here with Isaac Brown, when he came to borrow the money, but did I open my mouth to you on the subject," and that appellee replied that he did not, that he knew of; that appellant then asked him what authority he had for charging the money to him, and

that appellee replied that he considered him and Isaac Brown all one, and he wanted to be sure of his money.

James Matthews also testified, that Isaac Brown purchased cotton of him, to enable him, as he said, to get an advance payment from appellee for the purpose of paying Young for the land which he had purchased from him, that he let him have 1400 pounds for $2 per 100 pounds; and also, to pay him all over that price the cotton should bring in New Orleans; and that said Isaac afterwards paid him $2 per 100 pounds for the cotton; that after the cotton was ginned and baled, he and Isaac hauled it to the river to be shipped: that he (witness) told appellee to pay himself $2 per 100 pounds out of the proceeds of his cotton, towards the payment of the money he had advanced said Isaac on it, and to purchase certain articles for him (witness) in New Orleans, and pay for them out of the residue, and that appellee agreed to do so.

Isaac Brown, the last witness introduced by the appellant, testified, that in the fall or winter of 1850, he bought of one Young, a tract of land, for which he paid him $200, and was to pay him $400, it being the residue of the purchase money, in a short time thereafter; that not having the $400, required to complete the purchase, and meeting with the appellee, who was a merchant in the neighborhood, he told him that he was compelled to raise the $400, and asked him if he would advance him the amount on 20 000 pounds of seed cotton delivered at his gin, and that appellee agreed to do so; that he then went to James Matthews and Enoch Wood, two of his neighbors, and got them to agree to let him have enough seed cotton to make up the 20 000 pounds, he having agreed to pay them $2 per 100 pounds, and to let them have whatever it should sell for, over and above that price in New Orleans; that he was to deliver the 20 000 pounds of cotton before the appellee was to be called upon for the $400, but that appellee, upon his request, paid $200 to said Young before any of the cotton was delivered; that in consequence of high water, he was prevented from delivering the cotton at the gin as soon as he ex-

pected, and said Young being on the eve of leaving the county, he went to appellee to inform him of the cause of his failure, and also to apprize him of his necessity to raise the balance of the money, and to get him to advance it before the cotton was delivered; that he saw appellee and told him his situation in regard to the matter, and told him that if he would pay Young the $200 for him, that he would deliver the 20 000 pounds of cotton as soon as the creek should fall; that appellee agreed to do so, and accordingly paid over the remaining $200 to Young; that the agreement between himself and appellee was, that appellee should advance the $400 to pay Young for his land: that he would deliver 20 000 pounds of seed cotton at his gin; that appellee would gin, bale, and ship the cotton to New Orleans, and pay himself out of the proceeds, the $400 he was to advance, and to account for and pay over the residue, if any. That he delivered the 20 000 pounds of cotton at appellee's gin, that it was then worth $2 per hundred; that the 20 000 pounds were hauled to the gin by himself, James Matthews, and Enoch Wood. Upon cross-examination, appellee asked the witness, Isaac Brown, whether he did not bring an order from appellant for the last $200 that he paid to Young for him; to which he replied in the negative, that appellant never did give him an order for the money; that he had nothing to do with it, and had no right to give an order for it. The same question was repeatedly asked him, and he as often denied that he had ever, upon any occasion, taken an order from appellant to appellee for the money paid to Young, or any other person. He was then asked by the counsel, for the appellee, whether he had delivered an order, or other paper writing, which he himself said was signed by the appellant, to appellee at his store, upon a certain occasion when Joseph Mausco was present, on the 10th day of January, 1851, for the last $200, to which he replied that he did not, but that when he went to appellee to get him to advance the residue of the money to Young, he took with him a letter written to appellee by appellant, stating that if appellee would let him (witness) have the money to

pay Young, he, appellant, would guarantee the delivery of the 20 000 pounds of cotton, as soon as the creek should fall ; that he showed the letter to appellee, who read it and threw it down, saying he wanted no security, and agreed to pay Young the $200; that when appellee threw down the letter, he (witness) took it up and tore it to pieces; that at the time he was insolvent, and that the appellee well knew it.

Judge Bayless, the next, and his last witness, testified, that before the commencement of this suit, appellee spoke to him about suing appellant on a book account; that he told him that it would be necessary for him to file his account before the writ issued; that appellee spoke of the nature of his demand, and said that the transaction was between himself and Isaac Brown, but that he had never kept an account against Isaac Brown, and had charged the money to the appellant ; that he (witness) was a justice of the peace at the time, and appellee said he would make out the account and send it to him.

Here the appellant closed the evidence on his part ; when the appellee introduced Joseph Mansco, who testified that he was at appellee's store, on Little Piney, about the 10th January, in company with Isaac Brown and Young, the man who sold his land to Isaac. That Isaac spoke to appellee to let him have some money to pay Young; that appellee remarked that money was scarce, and did not seem inclined to let him have it : that Isaac then pulled out and presented to appellee a paper writing, and said that if he was not good, John Brown, meaning the appellant, was; that appellee shortly afterwards paid $200 over to Young : that the paper handed by Isaac to appellee, was a notice or an order; that he did not read it, nor hear it read, but that Isaac said to appellee, when he handed it to him, that if he was afraid to trust him, he could not be afraid of John Brown, that he was good, and that there was an order, or a notice signed by him for the money. This is, substantially, all the evidence adduced upon the trial in the court below.

The testimony of the several witnesses, introduced by the ap-

pellee, when taken in connection with the tacit admission by the appellant, we think can leave but little doubt, but that the money advanced was properly charged to the appellant. True it is, that the witness, who was present, at the time the contract for the money was made, could not say positively whether it was the appellant, or the said Isaac Brown, who contracted for it. This then, if taken by itself and uncorroborated, might have left room to doubt upon the subject. But when it is considered that the charge was made immediately against the appellant, and in his presence, that the appellee had never kept an account with Isaac, but that his purchases, anterior to that time, had been charged to appellant, and paid for by him without objection; that said Isaac was insolvent, and that appellee well knew it, that the appellant went to the gin before the cotton was baled, and complained that it was not sufficiently protected; that he remarked to Wood that he ought not to complain at his loss, when he had to lose so much upon his cotton, and referring to the cotton upon which the money had been advanced, that the cotton had fallen *short* of the $400 paid to James Young, and his account for 1850, and that he would have to try and raise the money to pay him, and that he sent a notice, or an order, to the appellee for the money: there certainly can be no room for doubt or cavil, unless those who testified to these facts have been shown to be unworthy of credit, or the proof on the part of the appellant is overwhelming and utterly impregnable. Wood, the first witness, introduced by the appellant, testified that Isaac Brown applied to him for his crop of cotton to enable him, as he said, to obtain an advance of money from the appellee to pay for a tract of land which he said he had purchased from one Young, and that he agreed to let him have a portion of his crop. He also testified, that after he had heard that appellee had gotten a return of sales in New Orleans, he and appellant went to appellee's store; that appellant wanted to settle his account; that appellee presented his account, and that a dispute arose about the money charged in the account; that appellant said he was willing to pay his store

account; that he had nothing to do with Isaac Brown's contracts, and denied that he ever had anything to do with the money advanced by appellee to Isaac Brown; that on being asked by appellant, whether he opened his mouth, when he went with Isaac Brown to borrow the money: that he replied that he did not, that he knew of; and that on being asked by what authority he had charged the money to appellant, he replied that he considered him and Isaac Brown all one, and that he wanted to be sure of his money. It will be perceived that all this witness knew, in relation to the contract of lending, he learned from Isaac Brown himself, until he and the appellant went to appellee's store, after a return of the sales of the cotton in dispute, and also of the cotton that the witness claimed, and then it was that he says the conversation occurred between appellant and appellee, which has already been detailed. It appears that the witness, on that occasion, got into a snarl himself with the appellee about the cotton, that he claimed to have hauled to his gin, and what effect this difficulty may have had upon his testimony in this case as tending to defeat the claim of the appellee, connected with other circumstances surrounding the transaction, it was perfectly competent for the jury to decide. The testimony of James Matthews is perfectly consistent and reconcilable, with that offered by the appellee. All that he knew of the contract of lending, he derived from Isaac Brown, and that the appellee agreed to pay himself for the money advanced, whether to Isaac or the appellant, out of the proceeds of witness' cotton, could not raise the slightest presumption that the advance was made to the former. Isaac Brown, it is conceded, testified in positive terms, that the money was advanced to himself, and upon his own responsibility, yet the reluctance which he manifested in disclosing the fact of having borne a letter in respect to the money from the appellant to the appellee, and also the discrepancy between his testimony and that of Mausco, touching its contents, well warranted the jury in disbelieving all that he said in relation to the original contract. We have now passed upon all the testimony, which we conceive

material, and upon a full review, we think that there is clearly nothing in the verdict calculated to shock any one's sense of justice and right.

The next ground of objection to the verdict is, that it is contrary to the instructions of the court. We have not been able to discern any foundation for this objection to rest upon, as there is nothing in the finding that is in any way inconsistent with the instructions. The third and last special ground is, that the court mistook the law in giving in charge the instructions called for by the appellee. The court gave but two instructions at the instance of the appellee. The first was, that if the jury believed, from the evidence, that the plaintiff advanced said sum of $400 in his account charged to defendant, and charged the same to him, that they must find for the plaintiff, as to the amount which might be due. There certainly could be nothing wrong in that, for it is a self-evident proposition. The other was, that if they believed, from the evidence, that the account of plaintiff was presented by him to the defendant, and that the whole account was read to the defendant, and he did not object to the same, or any item thereof, or the balance struck thereon, they should find for plaintiff; this is a circumstance from which the jury may presume its acknowledgment.

If any good objection could be taken to the first branch of this instruction, as being too strong, it is clearly obviated by the last clause, as it most undoubtedly would be a circumstance, and a strong one, from which the jury would have been warranted in finding for the appellee. Indeed, acquiescence or silence, when a demand of a debt is made, is equivalent to an admission, as already held in a previous part of this opinion ; and, consequently, the instruction was perfectly right. The fourth and last objection is in general terms, and alleges that the verdict is unjust and unwarranted by the facts in the case. No exception was taken to the action of the court in modifying or refusing to give the instructions asked by the appellant; and, consequently, this court

is not called upon to express any opinion upon that point. See *Carr vs. Crain*, 2 *Eng.* 249.

We entertain no doubt of the correctness of the judgment of the court below, and it is, consequently, in all things, affirmed.

Mr. Chief Justice ENGLISH not sitting.

Absent, Mr. Justice WALKER.