ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY *v.* HYDRICK.

Opinion delivered July 7, 1913.

1. EVIDENCE—PROOF OF PHYSICIAN'S BILLS.—In an action against a railroad company for damages for personal injury, it is competent to prove the amounts of physician's bills by identifying the same by witnesses and introducing the bills in evidence. (Page 238.)

2. DAMAGES—PERSONAL INJURY—MEASURE OF.—In an action for damages against a railroad company for an injury resulting in the loss of plaintiff's leg, in the absence of a specific objection to the same, it is not reversible error to instruct the jury as to the amount of damages recoverable, that they may award damages to compensate plaintiff for pain, suffering, and for personal disfigurement on account of the injury, and a reasonable sum to pay for medicine and medical treatment. (Page 241.)

3. INSTRUCTIONS—BASIS OF VERDICT—PRACTICE.—While it is better form and better practice for the court to tell the jury that its findings on every issue of fact in a case must be based upon the evidence, yet when it is plain from the charge of the court, taken as a whole, that the jury were told that their findings must be based upon the evidence, the jury could not be misled or feel authorized to make a finding that was not based upon the evidence because some separate or particular instruction omitted this precaution. (Page 239.)

4. DAMAGES—PERSONAL INJURIES.—In an action for damages against a railroad company for injuries to plaintiff resulting in the necessity of amputating plaintiff's leg, where the court charged the

jury that damages were recoverable for personal disfigurement, and gave no instruction permitting damages for loss of time, it was not error to refuse appellant's prayer for an instructions that there could be no recovery for loss of time or any incapacity to labor.  (Page 241.)

Appeal from Independence Circuit Court; *R. E. Jeffery*, Judge; affirmed.

### STATEMENT BY THE COURT.

On May 17, 1912, I. P. Hydrick was a passenger on appellant's train from Newport to Swifton, Arkansas. After the train whistled for Swifton the name of the station, "Swifton," was announced, and when the train stopped Hydrick left his seat to debark from the train, and when he got on the platform of the car the train pulled up with a jerk and Hydrick fell off.  The train first stopped, then pulled up with a jerk, throwing Hydrick "about middleways of the depot."  Hydrick's leg was so badly injured that it had to be amputated.  He remained in bed on account of the injury about two months.  Besides the injury to his leg, he was injured in the left foot and about his stomach.  His appearance, a short time after the injury, indicated that he had suffered quite a loss of blood; he was quite thin; looked bad, and from his appearance showed that he had endured a great deal of pain.

He instituted this suit against the appellant, alleging that he was a passenger, and when appellant's train stopped at Swifton, his destination, he undertook to alight, and that appellant's servants suddenly jerked the train forward, producing the injury of which he complained.

The defendant answered, denying the allegations of the complaint and setting up affirmatively the defenses of contributory negligence and assumed risk.

The above are the facts in regard to the negligence of appellant and the injuries received by appellee.

Willie Hydrick testified that the doctor's bill of Doctor Willis for attending his father was $221.  He said

that Doctor Willis presented his bill and it was something over $200. Appellee's counsel presented the bill to the witness and witness identified it as Dr. L. E. Willis' bill for medical and surgical attention. Counsel then offered the bill in evidence. The appellant objected. Witness was asked how much the bill showed, and answered $221.

V. G. Richardson, a witness for appellee, testified that he saw a statement from Doctor Justis to Ison Hydrick for services, which the doctor wrote in his presence and handed to witness. Witness identified the statement, and read the same to the jury, as follows:

"Swifton, Ark., Nov. 5, 1912.

"Mr. Ison Hydrick, Newport, Ark., in account with Dr. S. Justis. For services rendered in amputation of leg, $25. Dr. S. Justis."

The court overruled the objection to the above testimony and appellant saved its exceptions.

During the taking of the testimony Hydrick, the plaintiff, was assisted by one of his attorneys to the witness stand in the presence of the jury, and after he was identified as the plaintiff in the case, the defendant objected to his testifying in the case.

The court sent the jury out of the room, and, after investigation, determined that the plaintiff was not a competent witness in his own behalf. When the jury returned into court the plaintiff was not again offered as a witness. No ruling of the court was made as to whether or not plaintiff was a competent witness, counsel for the plaintiff not insisting upon his testifying.

One of the attorneys for the plaintiff, in his argument to the jury, stated that the jury should consider the loss of his limb and the personal disfigurement that will attend him through life. Defendant's counsel objected to the remarks and asked the court to insturct the jury that the same were improper. The court declined to so instruct the jury, and defendant excepted, whereupon the attorney stated further, "If they (defendant) wanted to object they ought not to have cut his leg off," and as to

the latter statement, upon the objection of the defendant, the court stated that that was an improper statement and ought not to influence the jury in the case.

Another one of the attorneys for the plaintiff, in the course of his argument, stated: "The court tells you to bring in a verdict for the pain he has suffered; and not only that, but for the loss of the limb." Whereupon the defendant objected, and the court overruled the objection and declined to instruct the jury that this was improper argument, and exceptions were saved; but the court stated to the jury, "Not for the loss of the leg; the disfigurement of the body." Whereupon said attorney continued: "If that is not the loss of it I don't know; you will find how he is disfigured by getting his leg cut off, and it is gone." Whereupon defendant objected to this statement, which objection was overruled by the court, and the court declined to instruct the jury that this was improper argument, and exceptions were saved.

Continuing, the attorney stated: "Don't bring him in a six-bit verdict; don't turn the railroad loose for mangling this man; don't let him go through the balance of his life an object of pity and charity, but bring him in a substantial verdict; a verdict that you would like to have brought in for you if you had lost a limb; one you would believe to be just to you if you were in that attitude.

"Bring in such a verdict as you believe this man is entitled to and don't be sparing with it; base it on the word 'just' and don't base it on the word 'unjust.'"

The defendant objected to these statements and requested the court to instruct the jury that the same were improper argument. The court overruled the objection, and declined to so instruct, to which exceptions were duly saved.

Another one of the attorneys for appellee, in his closing argument, stated: "Put yourself in the place of the railroad; if you were carrying on a business and you had some man employed and by reason of his care-

lessness and negligence you had to pay damages, would you keep him in your employment a moment? You wouldn't. No reasonable man would do it. If railroad companies are not individuals, they are controlled by individuals, and they would act as men would act, and they don't and ought not to keep men in their employ that would do negligent things for which they had to pay damages. That is the reason we are entitled to damages."

"I am appealing to you as reasonable men. I know my Brother Campbell (defendant's attorney) wouldn't want this case reasoned out. I am reasoning this case. I am giving you my reasons for my contentions in this matter. If these railroad men were to come and say they were negligent, their employer would have to pay damages, and, of course, their employer would hold them responsible. Of course, they are excusing themselves. Whenever one does a thing that injures another, he always tries to excuse himself and throw it on the other fellow.

"Doctor Willis' bill was $221; Doctor Justis' bill for assisting in the amputation of the foot was $25; that is $246; and there is $3 for medicine that we can account for; that is $249 actual expenses.

"Put that onto what you say a man ought to have that has lost his foot by reason of the negligence of somebody else; that suffers pain in the loss of that foot, the mashing of the other, the wounding of the stomach; still suffers pain; and say what would you have it done to you for, what would you want, and then fix his damages in accordance with that."

Defendant objected to each of the above statements and requested the court to instruct the jury that same were improper, but the court overruled the objections, declined to so instruct, and the defendant duly excepted.

At the request of the plaintiff the court granted the following prayer:

"6. If you find for the plaintiff, when you come to fix the amount of damages he should recover in this case,

you will give him such sum of money as you may believe will compensate him for such pain as he has suffered on account of the injury; such further sum as you believe will compensate him for his personal disfigurement, occasioned by the injury; and give him such other sum of money as may reasonably be necessary to pay for the medicine and medical treatment he has been required to have on account of the injuries received.''

The appellant duly excepted to the ruling of the court in granting this prayer.

The following prayer was presented by the appellant, which the court refused, and to which appellant duly excepted, towit:

"10. If you should find for the plaintiff, there could be no recovery for any loss of time or any incapacity to labor. That is not to be considered by you.''

The jury returned a verdict for plaintiff in the sum of $7,749. Judgment was entered for that sum, and this appeal has been duly prosecuted.

*E. B. Kinsworthy, Campbell & Suits* and *T. D. Crawford,* for appellant.

1. It was error to permit the witnesses, Hydrick and Richardson, to testify with reference to the bills of Doctors Willis and Justis. Kirby's Digest, § 3151, does not apply in a suit of this kind where the amount of the account is a collateral matter, but, if applicable, it was not complied with, as the accounts were not verified.

The mere production of an account does not establish its correctness, and the defendant need not offer evidence in defense until some testimony is produced by the plaintiff tending to show the correctness of the account. 64 Ala. 240.

2. Instruction 6 was erroneous in that it did not limit the jury to the testimony in forming their belief as to the amount of damages. 105 Ark. 205.

3. The cause should be reversed for improper argument and misconduct of counsel for plaintiff and because the verdict was excessive. "Loss of time" was not an element of damage, plaintiff being at the time of

the trial a convicted felon under sentence of eleven years in the penitentiary, which was well known to his counsel. It was improper to make profert of him by assisting him to the witness stand in the presence of the jury. The element of personal disfigurement, while proper under ordinary circumstances, was not a proper element of damages in this case, and should not have been included in instruction 6.

If all the objections to the improper argument of counsel had been sustained, and timely admonition and rebuke of counsel had been administered by the court, yet the prejudicial effect could not have been removed. 58 Ark. 483; 70 Ark. 305.

*Stuckey & Stuckey* and *Ira J. Mack,* for appellee; *Hal L. Norwood,* of counsel.

1. Appellee was immediately withdrawn from the witness stand upon objection to his competency being sustained, and no objection was made nor ruling asked for or given as to the alleged "profert" of the witness. Because he was under sentence is no reason why he was barred from sitting in the presence of the jury. Objectionable matter is waived unless objection is made at the time and pressed to a ruling and properly preserved in the motion for a new trial. 85 Ark. 488; 97 Ark. 632, and cases there cited.

2. Instruction 6 is correct. It was not necessary to repeat the words "from the evidence" to the jury, who had taken the oath prescribed by law, and knew not only from that but also from the instructions given, taken as a whole, that their finding must be based upon the evidence. Kirby's Dig., § 4530; 69 Ark. 636; 48 Ark. 344; 37 Ark. 522; 83 Ark. 437; 2 Thompson on Trials, (2 ed.), § 2318; 70 Md. 328; 76 Mo. 408; 104 Ind. 429; 72 Ind. 202-3; 77 Ill. 312; 78 Ill. 302; 174 Ill. 560; 64 Ark. 251; 100 Ark. 107; 97 Ark. 358; 93 Ark. 140.

Personal disfigurement was a proper element of damages. 69 Ark. 636; 65 Ark. 626; 83 Ark. 437; 60 Ark. 485; 13 Cyc. 43. And the fact that plaintiff was under sentence to the penitentiary would not detract from this

right to recover for pain and disfigurement.  Art. 2, § 17, Const. Ark.

3.  Appellant's contention that the cause should be reversed for misconduct of counsel is not tenable.  The trial court had the opportunity to see and hear all that was done and said, and the wide discretion inherent in that court in such cases ought not to be interfered with by this court in this case.  100 Ark. 442; 95 Ark. 238; 97 Ark. 86; 100 Ark. 124.

Wood, J., (after stating the facts).  There was no error in the ruling of the court in permitting the testimony in regard to the amount of the doctor's bills.  The testimony was not hearsay, but was original evidence. One witness saw the doctor present his bill for his services.  He saw what the amount was and saw the itemized bill, and there was no objection made to it by the appellee, to whom it was presented and for whom the services were rendered.

Another witness testified that he saw the statement rendered to Hydrick by Doctor Justis for the amount of his services.  The witness says the statement was rendered to Hydrick at the request of the witness.  The testimony was competent as tending to show the amount the physicians charged for their services, and the amount that appellee would have to pay for same.

The fact that the doctors rendered the accounts to the appellee, and that he acquiesced in the amounts thereof tends to establish the fact that appellee was indebted to the physicians for professional services in the sum of $246.  *Brown* v. *Brown,* 16 Ark. 202.  See also *Hamilton-Brown Shoe Co.* v. *Choctaw Mercantile Co.,* 80 Ark. 440.

There was no prejudicial error in the ruling of the court in granting appellee's prayer for instruction No. 6. While this court, in the case of *St. Louis, I. M. & S. Ry. Co.* v. *Steed,* 105 Ark. 205, criticised a similar prayer because it did not tell the jury in specific terms that their finding as to the amount of damages must be based on

the evidence, yet the court did not hold that the giving of the instruction in that case was reversible error.

In *Railway Company* v. *Cantrell*, 37 Ark. 522, this court, in commenting upon a similar instruction, said that it was "clearly correct." While such an instruction is not to be commended in form, and is open to the objection mentioned in recent cases, yet, unless the attention of the court is specifically called to it, and the court refuses to make the correction, it can not be held that such an instruction is reversible error, and this court has not as yet reversed a case for a failure to qualify the instruction in the particular mentioned, although instructions in practically the same form as the one under consideration have often appeared in cases passed upon by this court. See *L. R., M. R. & T. Ry. Co.* v. *Leverett*, 48 Ark. 344; *St. Louis, I. M. & S. Ry. Co.* v. *Price*, 83 Ark. 437; *St. Louis, I. M. & S. Ry. Co.* v. *Dallas*, 93 Ark. 214.

While it is always better form, and the better practice, for the court to tell the jury that its findings on every issue of fact in the case must be based upon the evidence, yet where it is plain from the charge of the court, taken as a whole, that the jury were told that their findings must be based upon the evidence, the jury could not be misled nor feel authorized to make a finding that was not based upon the evidence because some separate or particular instruction omitted this precaution. The jury were sworn, in the first instance, to try the case and a true verdict render according to the law and the evidence. That being true, it is not likely that any man of sufficient intelligence to be a competent juror would feel authorized to wander beyond the evidence to find matters upon which to predicate his findings in the case. The conscientious juror would necessarily feel restrained by his oath to base his findings upon the evidence.

In several other instructions which the court gave, both at the instance of the appellee and the appellant, the jury were given to understand that their findings upon the particular phases presented in each of the

prayers for instructions should be based upon the evidence; and, taking the charge as a whole, the jury could not possibly have understood that they were authorized to render any finding of fact that was not warranted by the evidence.

This court, in *McGee v. Smitherman*, 69 Ark. 632, in passing upon an instruction that was challenged because it did not say that the amount of compensation "should be fixed and determined from the evidence," used this language: "There is no means by which the jury could determine what would be a fair compensation for the loss sustained by the appellee, except the evidence, and it was, therefore, plainly implied, and every intelligent juror is presumed to have understood that the jury were to be governed by the evidence."

Mr. Thompson says that "juries are supposed to have some small trace of sense; there is a presumption that they are to find from the evidence, and, accordingly, it is not necessary to repeat this expression at every turn in the charge."

In other instructions in the case the court indicated to the jury that their findings must be based upon "a preponderance of the evidence," and this was sufficient to prevent the possibility of their going outside of the evidence in making their verdict.

Appellant contends that personal disfigurement was not an element of damages in the case, for the reason that plaintiff was a convicted felon, and sentenced to confinement in the penitentiary for eleven years, and further objects to instruction No. 6 on that ground.

A man does not cease to be a human being because he is convicted and is imprisoned in the State penitentiary. He does not thereby necessarily lose all sense of pride and pleasure in the perfection of his physical organism. Although occupying a felon's cell, he may experience as great mental anguish over the dismemberment of his body and consequent disfigurement of his person as if he were a free man, and the law is not so inhuman as to deny him compensation in damages

against any one who may have negligently inflicted an injury upon him. The law makes no exceptions in such cases, against those convicted of and imprisoned for crime.

The court, in its sixth instruction, enumerated the elements of damage which the jury were entitled to consider, under the pleadings and evidence in the case, and the loss of earning power was not mentioned as one of these elements of damage. This charge of the court was the guide to the jury; and the remarks by counsel concerning the loss of appellee's leg must have had reference to his personal disfigurement. Indeed, the court so limited it, in response to the objection of appellant to such remarks. There was therefore no prejudicial error in the court's refusing appellant's prayer for instruction No. 10. The court having affirmatively told the jury in instruction No. 6 what elements of damage should be considered, it was not necessary to further instruct them that certain elements were not to be considered. Besides, as we have shown, the court, by its remarks, in effect, instructed the jury that there could be no recovery for loss of time or incapacity to labor. It must have been clear to the jury, from the court's remarks and his formal charge in the sixth instruction, that the loss of the leg could only be considered as an element of damage in the way of personal disfigurement.

The other remarks of counsel did not transcend the bounds of legitimate argument.

The pain and suffering and the mental agony which plaintiff has endured, and must continue to endure, by reason of the injuries he has received, as shown by the evidence, convinces us that the amount of the verdict is not excessive.

The record is free from prejudicial error, and the judgment must therefore be affirmed.