NEWELL CONTRACTING COMPANY *v.* ELKINS.

Opinion delivered December 24, 1923.

1.  HIGHWAYS—EQUITABLE GARNISHMENT.—Highway improvement districts are not subject to garnishment at the instance of a creditor of the contractor, unless the contractor is insolvent and has completed the improvement.

2.  EQUITY—OBJECTION TO JURISDICTION—WAIVER.—Objection to the jurisdiction of chancery to entertain an equitable garnishment against a highway improvement district was waived by the debtor, where it was not raised until after the garnishment had been discharged, and also where the debtor asked affirmative relief in that court.

3.  EVIDENCE—PAROL EVIDENCE RULE.—The rule forbidding the introduction of parol evidence to contradict a written agreement is not infringed where the writing related to certain transactions while the parol evidence related to an independent agreement concerning subsequent transactions.

Appeal from Chicot Chancery Court; *E. G. Hammock,* Chancellor; reversed.

*L. C. Going,* for appellant.

1. The chancery court had no jurisdiction. In failing to allege that the appellant was insolvent, the complaint on its face failed to show that there was no adequate remedy at law. 148 Ark. 181; 230 S. W. 17; 90 Ark. 236; 134 Ark. 109; 143 Ark. 446. And, before an equitable garnishment may be issued, there *must* be an allegation that the original debtor *is insolvent.* The foregoing authorities also settled the principle that, before an agency of the State, such as a road or drainage district, can have its funds tied up under an equitable garnishment, the improvement must have been completed and the district must have no claims against the contractor. See also 20 Cyc., Garnishment, p. 988; 51 Am. St. Rep. 114, note; 28 Cyc., Municipal Corp., p. 1765; 1 Shinn on Attachments, 132; 3 Abbott, Municipal Corporations, p. 2547; Cooley on Municipal Corporations, 368; 1 Dillon on Municipal Corporations, 5th edition, 467, § 248; 56 Ark. 476; 20 S. W. 402; 90 Ark. 226; 118 S. W. 1011. The contract was in writing, and, as the damages

claimed were on account of an alleged breach thereof, the same was easily measurable, and the action should have been brought at law. 7 Ark. 520; 13 Ark. 630; 26 Ark. 649; 27 Ark. 77; *Id.* 157; 30 Ark. 579; 48 Ark. 331; 191 S. W. 220. Want of jurisdiction may be taken advantage of by answer, as well as by demurrer, and may be made at the hearing if it appears from the proof. 14 Ark. 50. See also, C. & M. Digest, §§ 1189, 1192; 134 Ark. 337; 136 Ark. 157; 145 Ark. 604; 90 Ark. 195; 95 Ark. 618; 80 Ark. 145; 109 Ark. 250.

*Harry E. Cook* and *Mehaffy, Donham & Mehaffy,* for appellee.

1. We do not think that the statute, C. & M. Digest, § 1239, was intended to require the court, at all stages of the proceedings, to permit the introduction of new issues; and, since there was no issue raised in the original pleadings as to the jurisdiction of the court, appellant ought not to be permitted, eight months thereafter, to file an amendment attacking the jurisdiction of the court and raising a new issue, viz. the solvency of the appellant. 85 Ark. 39; 104 Ark. 276; 80 Ark. 326; 68 Ark. 314. By its failure to move to transfer before filing the answer, appellant waived objection to the jurisdiction. 31 Ark. 411; 32 Ark. 562; 51 Ark. 235; 74 Ark. 81; 122 Ark. 104; 142 Ark. 609. Appellant is estopped to question the jurisdiction, not only because it executed a bond and applied to the court to approve the same, and to discharge the garnishee and order the funds restored to the appellant, all of which was done, but also because it filed a cross-complaint with prayer for affirmative relief. The authorities are ample that the funds of an improvement district are subject to garnishment in a court of equity, and that garnishment is sufficient to give jurisdiction to a court of equity in cases otherwise cognizable at law. 143 Ark. 446; 144 Ark. 621.

2. The contract which is the basis of this action is plain and explicit. Being in writing, it cannot be varied, added to or changed by parol testimony. 95 Ark. 131; 125 Ark. 219; 139 Ark. 53; 9 Ark. 501; 29 Ark. 544; 30

Ark. 186; 49 Ark. 285; 54 Ark. 525; 21 Ark. 69; 13 Ark. 448; 15 Ark. 543; 24 Ark. 210.

SMITH, J.    Appellee was the plaintiff below, and sued in equity to recover on the following writing:

"Birmingham, Ala., May 23, 1921.

"M. W. Elkins & Co., Little Rock, Ark.

"*Re* Tyronza-St. Francis Road District, Cross County, Ark.

"Gentlemen: I am today in receipt of bonds Nos. 76, 77, 78, 79, 80, 81, 87 and 88 issued by the above district. I agree to return these to you within sixty (60) days from this date, as you have merely loaned me the bonds to assist me in taking care of my payroll on the above work, and it is thoroughly understood that I am to return to you the above bonds within 60 days without any payment on your part.

"If I should fail to return the bonds to you within sixty days from the above date, I agree to pay you at the rate of 85c on the dollar and accrued interest for the above bonds.

"Yours truly,

"NEWELL CONTRACTING COMPANY,

"By A. T. Newell."

He alleged the failure to return the bonds, and prayed for judgment for $6,800. As an incident to this suit appellee alleged that the appellant company (hereinafter referred to as the company), was engaged in construction work under a contract with a road improvement district in Chicot County, and a garnishment issued against the district for the sum due the company under that contract.

The company filed an answer and a cross-complaint. It admitted execution of the writing set out above, and, by way of cross-complaint, alleged that it had entered into a contract to construct the roads in the Parkin & Tyronza Road Improvement District in Cross County and that, prior to the execution of this contract, appellee had contracted with that district to purchase the bonds of the

district and to pay therefor 87.75 cents on the dollar, the bonds to be taken up and paid for in such amounts as was necessary to pay the estimates given to the company on its work under its construction contract. That on December 13, 1920, after the company had done a considerable amount of work, and had received from the engineer estimates thereon which entitled it to be paid the proceeds of bonds in discharge thereof, appellee made default in his contract with the district to take up the bonds. Whereupon appellee called a meeting of the commissioners of the district and the president of the company to confer with him on the subject of his contract to buy the bonds. At this meeting appellee admitted his inability to take the bonds, and asked the commissioners of the district to hold down the work during the remainder of December and during the months of January and February, and proposed that, if this was done, he would be prepared, after March 1, to pay for enough bonds to pay the company for the work covered by the engineer's estimates, and would thereafter take up enough of the bonds each month to pay for such work as the company was able to do. It was then agreed that estimates for not exceeding $7,500 should be given by the engineer for work done during the months of January and February, respectively. On the date on which this agreement was reached the parties executed the following writings:

"Little Rock, Ark., Dec. 13, 1920.
"Mr. M. W. Elkins, Little Rock, Arkansas.
"*Re*: Tyronza & St. Francis Road Improvement District, Cross County, Arkansas.
"Dear sir: On the thirty-six thousand ($36,000) dollars of bonds I am to receive from the Mercantile Trust Company, on a basis of 87.75 cents on the dollar, maturing in the years 1924, 1925 and 1926, I agree to deliver these bonds to the Mercantile Trust Company at any time you request, by having the bonds shipped to the Mercantile Trust Company, St. Louis, Missouri, and to be paid for when received there at the rate of 87.75

cents on the dollar and accrued interest from December 17, 1920, to date the bonds are taken up and paid for at the Mercantile Trust Company.

"Very truly yours,

"NEWELL CONTRACTING COMPANY.

"By A. T. Newell, Pres."

"December 13, 1920.

"Mr. A. T. Newell, 1531 First Ave., Birmingham, Ala.

"*Re*:  Tyronza & St. Francis Road Improvement District, Cross County, Arkansas.

"Dear sir:  In reply to your letter of this date, I agree to take up the thirty-six thousand ($36,000) dollars of bonds named in your letter, on March 1, 1921, and I agree to take up on April 4, 1921, the estimate due January 4, 1921, not to exceed $7,500.  On May 4, 1921, I agree to take up the estimate due on February 4, not to exceed $7,500.

"Very truly yours,

"MWE:  W                            M. W. ELKINS."

The cross-complaint further alleged that appellee defaulted in his agreement to redeem bonds, but, when called upon to do so, proposed to furnish either $2,500 in money or eight bonds for a thousand dollars each, to be used by the company as collateral, and the writing herein sued on was executed.  That the writings dated December 13 related to bonds to cover estimates then outstanding and the estimates for January and February, which were not to exceed $7,500 for each of those months, and that an oral agreement was made which covered the other estimates to be received from the district's engineer in the construction of the improvement. This oral agreement was to the effect that the trustee named in the contract for the sale of the bonds by the district to appellee should, on the order of the district, issue to the company bonds at 87.75 in payment of these additional estimates, and that, after March, appellee should redeem the bonds so issued to the company at the contract price for the sale of the bonds to appellee;

and it was alleged that, pursuant to this agreement, the company took bonds in payment of estimates to the extent of $100,000, in addition to the $36,000 in bonds covered by the letters of December 13, but appellee failed to redeem the $100,000 of bonds at the contract price as agreed, and the company was compelled to sell them at the best price then obtainable, which was eighty cents on the dollar and accrued interest, and judgment was prayed for the loss thus sustained. Appellee filed an answer denying the allegations of the cross-complaint.

Upon the issue thus joined the parties proceeded to take testimony, and the company executed, with the permission of the court, a bond which secured the release of the funds of the Chicot County Road Improvement District.

On January 19, 1922, after most of the testimony had been taken, the company filed an amendment to its answer, in which the jurisdiction of the chancery court was challenged, upon the grounds that the complaint contained no allegation of the company's insolvency, and did not allege that the Chicot County district had completed its improvements, and the same had not, in fact, been completed, and its funds were not therefore subject to garnishment.

The court sustained a motion to strike this amendment to the answer from the files, on the grounds that it was filed out of time and without permission, and that the company had invoked the aid of the court to secure affirmative relief.

Upon the final hearing the court dismissed the cross-complaint as being without equity, and rendered judgment against the company in the sum of $6,800, and this appeal is from that decree. Other facts will be stated in the opinion.

We agree with counsel for the company that the chancery court was originally without jurisdiction, because there was no allegation of the company's insolvency, and there should have been no garnishment in

this case, because the Chicot County district, the garnishee, had not completed its improvement. These governmental agencies are not subject to garnishment prior to the completion of the improvement to construct which they are created. *Bayou Meto Drain. Dist.* v. *Chapline,* 143 Ark. 466; *Henslee* v. *Hobley,* 148 Ark. 181; *Road Imp. Dist. No. 4* v. *Southern Trust Co.,* 152 Ark. 438; *Greening* v. *Planters' Bank & Trust Co.,* 147 Ark. 477. See also numerous other authorities to the same effect cited in the appellant's brief.

However, this question was not raised in apt time; indeed, it was not raised at all until the discharge of the garnishment had been secured; and, by asking affirmative relief, the company waived the failure of the complaint to contain the allegations essential to confer jurisdiction on the chancery court.

The action of the court in dismissing the cross-complaint and in rendering judgment on the writing sued on is defended on the grounds, first, that the testimony supports that finding, and, second, that the testimony offered in the company's behalf tended to contradict and vary this writing, and was therefore inadmissible.

We do not concur in either view, and we discuss these propositions in reverse order.

It is the contention of the company that the writings set out were intended to cover bonds to be issued and redeemed in payment of outstanding estimates and the estimates for January and February, the estimates for those months not to exceed $7,500 for either month, regardless of the amount of work done by the company during those months, and that an additional parol contract was made to cover other estimates.

We recognize, of course, the legal propositions pressed by appellee, that a contemporaneous or antecedent verbal agreement is not admissible to contradict a written contract, and that prior negotiations are merged when the parties set down the terms upon which they finally agree in writing. But those rules of evidence

are not infringed here if the company's version of what happened on December 13 is accepted, that is, that the writings covered the payment of the outstanding estimates and those for January and February, not exceeding $7,500, and the parol agreement related to subsequent estimates.

Appellee was entitled to have judgment rendered in his favor for the price stipulated for the bonds in the writing, which is $6,800; but it does not follow that the company cannot prove there was another agreement. In other words, parties may make more than one contract, and we have concluded, from a consideration of all the testimony, that the writing was not intended to evidence the only contract made. It is true that appellee's testimony is to the effect that on December 13 he made no contract except that set out in the writings executed on that date; but there was much other testimony in the case, and we give a summary of it.

Appellee proved the execution and the delivery of the writing sued on, a fact admitted by the pleadings, and he testified, in effect, that no other contract was made on December 13, and that the company agreed to accept from the district the bonds of the district at the price at which he agreed to purchase them (87.75c on the dollar), and that he made no agreement to redeem the bonds so delivered to the company by the district, and that he only agreed to sell the bonds for the district as fast as he could, and to account at once for the proceeds of such bonds as he was able to sell.

On behalf of the company the testimony was to the effect that appellee was at all times in default in his contract to take up the bonds of the Cross County Improvement District, and, as a result of this default, the district was unable to pay the engineer's estimates to the company, less the retained percentage, pursuant to the construction contract, and suit against the district was threatened by the company. The district recognized its contractual obligations to the company, and

constantly urged appellee to take up bonds in sufficient amounts to meet the engineer's estimates. Estimates amounting to something less than $36,000 were outstanding and unpaid on December 13, when the meeting was held. This meeting was called by appellee, and was held for his benefit. As appellee was then unable to buy enough bonds to pay the past due estimates, the company agreed to accept bonds for that amount, and the writings bearing that date, which are set out above, were then executed. Pursuant to this agreement, the trustee was directed, with the consent of the commissioners of the district, to release to the company bonds amounting to $36,000. This the trustee did, and bonds for that amount were delivered to the company, and appellee redeemed these bonds on March 8, 1921.

The company commenced the construction of the Cross County improvement in September, 1920, and thereafter was receiving gravel and structural material, but had no funds with which to pay the freight, and the company had on the job an expensive outfit, and appellee was unable to pay for bonds fast enough to take care of the engineer's estimates to the company. It was appellee who was in default, and it was against him that suit was threatened by the district. He had not been employed as a mere broker to sell the bonds for the district, but he had purchased the bonds, and his contract of purchase required him to take up the bonds in sufficient amounts to meet the engineer's estimates, and this he had not been doing. There was no reason why appellee should have been released from his contract of purchase, and the preponderance of the testimony is that he did not ask to be released, but only asked indulgence in the way of an extension of time to dispose of the bonds which he had previously obligated himself to take, and testimony on the part of the company is to the effect that, in consideration of this forbearance, appellee agreed, after March 1, to turn the district and the company loose and to allow the work to progress as rapidly as possible, and

to take up the bonds, which were to be released to the company by the trustee, at the contract price of sale of those bonds.

It appears, from the writing signed by appellee on December 13, that he agreed to take up the $36,000 of bonds on March 1, and further to take up, on April 4, the estimate due January 4, not to exceed $7,500, and to take up, on May 4, the estimate due February 4, not to exceed $7,500. As has been said, appellee took up the $36,000 in bonds, but failed to take up the estimate for January and February. Thus the matter stood when the writing sued on was executed.

Acting with appellee in the matter was Mr. Duhme, of the firm of Friedman, D'Oenche & Duhme, bond dealers, with their place of business in St. Louis. Mr. Duhme attended the meeting of December 13, but his deposition was not taken, and there is no corroboration of appellee's version of the transaction. Appellee's testimony is that he made no agreement to take up the bonds after March 1, and that he agreed only to allow the company to use the eight bonds delivered it, and which were to be returned or paid for within sixty days.

Opposed to the testimony of appellee is the testimony of the president of the company, the secretary of the Cross County district, the president of the district, another commissioner of the district, and the engineer of the district. These five witnesses were all present at the meeting on December 13, and their testimony is substantially the same. In addition to the facts recited above, they testified that appellee admitted his default in taking up the bonds, but sought to excuse it on the ground that he was unable to make satisfactory sale of the bonds which he had contracted to buy; that he represented the market would improve after March 1, after which time he would ask no further indulgence, and that the commissioners agreed that the trustee might release to the company the $36,000 in bonds covered by the writing then executed, in consideration of appellee's agree-

ment to redeem them on March 1, and that it was also agreed that, after March 1, the trustee should release bonds to the company in amounts equivalent to the engineer's estimates, and that appellee would redeem all the bonds so delivered by the trustee after March 1.

We conclude the testimony showing there was an independent parol contract is admissible, and that the preponderance of the testimony sustains the company's contention. This being true, appellee should have judgment for the $6,800 sued for; and the company should have credit for the loss which it sustained on the bonds which appellee failed to redeem.

It appears there were $100,000 of these bonds, and that the best price obtainable, and the one which the company obtained, was eighty cents on the dollar, with accrued interest amounting to $850; so that the company received for these bonds $80,850. Appellee should have redeemed these bonds at $87,750, and, as the company received only $80,850 for them, appellee must sustain this loss of $6,900. The difference in the respective liabilities is $100, and, as the difference is in favor of the company, the judgment will be in its favor for that amount.