DIERKS LUMBER & COAL COMPANY v. HORNE.

4-8995                              224 S. W. 2d 540

Opinion delivered November 28, 1949.

*Wootton, Land & Matthews, Elbert Cook* and *Watson, Ess, Whittaker, Marshall & Enggas,* for appellant.

*E. C. Thacker* and *Hebert & Dobbs,* for appellee.

DUNAWAY, J. In an action by appellant, Dierks Lumber & Coal Company, against E. H. Horne, appellee, for an accounting for the wrongful and willful cutting of timber from its lands, and converting this timber into light poles, the chancellor found that Horne had so converted 426 poles. The court found the value of these poles to be Twenty-four Hundred Seventy ($2,470) Dollars and gave appellant judgment for this amount, less the sum of Thirty-six ($36) Dollars found to be due on Horne's cross-complaint for damage by employees of Dierks to certain poles owned by Horne.

Upon filing the action Dierks sought an equitable garnishment of funds due Horne in the hands of Arkansas Power & Light Company, and later of funds due him by one Leo Moudy. Both garnishments were issued.

On appeal appellee admits he was a willful trespasser, as found by the chancellor, and both parties agree that the finding below as to value per pole was correct. Therefore, the only questions presented to us for decision are:

(1) How many poles did Horne or his agents and employees cut and remove from appellant's lands?

(2) Was appellee wrongfully deprived of the use of moneys due him on account of the garnishments obtained, thus entitling him to damages?

Appellant is the owner of lands in Garland and Montgomery Counties. In the spring of 1946, Horne, under contract with the Arkansas Power & Light Com-

pany, began to cut, peel and deliver poles to the Power Company from lands owned by it in these counties. While Horne was conducting his operations, Dierks discovered that some of these poles were being cut from its lands. The trespass was brought to Horne's attention, and discussions ensued between Horne and Dierks' superintendent as to the damages due by reason of the wrongful cuttings.

Dierks' contention is that Horne had cut and removed 1,947 poles from its lands, instead of 426 as found by the court. The figure claimed was arrived at in this manner: After the trespass was discovered, representatives of Dierks went·upon the. lands where the cutting had been carried on, together with men supposedly designated by Horne, to count all stumps of trees cut within the past ten or twelve months. One full day's count resulted in a tally of 1,567 stumps. The next day, when the Dierks employees resumed the count, the other men did not reappear. Dierks did not know their identity, and. Horne denied ever having sent them. This count by the Dierks men alone brought the total to 1,683. Subsequent checks˜made in the same way were the basis for Dierks' final claim of 1,947 poles.

The only direct testimony as to the number of poles cut by Horne from Dierks' lands, which was given by men formerly employed by Horne in doing the actual cutting and hauling, supported the finding of the court below.

Appellant argues that Horne admitted cutting 1,683 poles, and that the chancellor erred in not finding for it for at least this number. That appellee made such an admission is urged on the basis of these circumstances: After appellant had arrived at the count of 1,683 poles, a statement to this effect was sent to Horne, who then came to see appellant's superintendent. This conference took place after Horne had first discussed the matter with Q. C. Shores of the Power Company. (On previous occasions when Horne had wrongfully cut timber from Dierks' lands, the Power Company had settled with Dierks on a stumpage basis. The testimony is in

conflict as to whether Horne or the Power Company ultimately bore the expense of these settlements.) Dierks' superintendent testified that Horne did not dispute the number of poles taken, as listed in the statement submitted to him, but said the amount of money claimed therefor was too high. Horne testified that he had not disputed the number, but that on the other hand he had never admitted its correctness—that because of disagreement as to value, they never reached the point of discussing the number of poles taken.

The trial court found against appellant's contention that Horne had admitted taking 1,683 poles. Unless the preponderance of the testimony is to the contrary, we will not disturb the chancellor's findings on appeal.

There is no testimony of any affirmative admission by appellee. While it is true that an admission may be presumed even from the acquiescence or silence of a party, *Brown* v. *Brown,* 16 Ark. 202, it must clearly appear that the circumstances demanded something more than silence on his part. Here there is no proof that Horne knew the number of poles actually taken, or had the necessary information on which to dispute the number contended for by appellant.

The burden of proof is on the plaintiff in a case such as this, to show by a preponderance of the testimony the quantity and value of timber cut by the defendant. *Stoneman-Zearing Lumber Co.* v. *McComb,* 92 Ark. 297, 122 S. W. 648. As we said in that case at page 298: "Bare proof that some of the timber was cut by appellant's men is not sufficient to charge it with responsibility for all the timber missing from the land during an indefinite period of two or three years."

From a careful study of the record we cannot say that the chancellor's finding as to the number of poles taken from appellant's lands by Horne is contrary to a preponderance of the testimony.

As to the second question, appellee complains of the issuance of equitable garnishments on the ground that insolvency was not alleged and proved. Although

Horne's insolvency was not specifically alleged in the complaint, the proof in the case showed that his properties were mortgaged and that he was in debt. The trial court found that the garnishments issued in the cause were properly issued. Of course, as contended by appellee, proof of insolvency is essential to a resort to the remedy of equitable garnishment. *Henslee* v. *Mobley,* 148 Ark. 181, 230 S. W. 17. The chancellor's finding that the equitable garnishments were properly issued, necessarily involved a finding that appellee was insolvent. The proof in regard to his financial condition was sufficient to support such a finding. Appellee cannot now complain of appellant's initial failure to allege insolvency. By not raising the question at or prior to the trial he waived the failure of appellant's complaint to contain such allegation. *Newell Contracting Co.* v. *Elkins,* 161 Ark. 625, 257 S. W. 54. Since in equity the pleadings will be considered amended to conform to the proof, *Mack* v. *Marvin,* 211 Ark. 715, 202 S. W. 2d 590, the chancellor's action with respect to the garnishments was proper.

The decree is in all things affirmed.