## Rose *v.* Rose.

Opinion delivered March 22, 1909.

DIVORCE—DESERTION.—Where the evidence establishes that a wife voluntarily abandoned her husband without just cause, and so remained for the statutory period, it was error to refuse him a divorce.

Appeal from Franklin Chancery Court; *J. Virgil Bourland,* Chancellor; reversed.

*Sam R. Chew,* for appellant.

1. The decree with reference to the custody of the child, shifting the custody between the father and mother, is not to the best interest of the child, and is clearly erroneous. 82 Ark. 461; 37 Ark. 30; 78 Ark. 193; 66 Ark. 601.

2. The testimony establishes the allegations of the complaint, and appellant should have been granted a divorce. If there was any fault on the part of appellant in his conduct toward appellee, it was condoned. 62 Ark. 611; 23 Ark. 615; 73 Ark. 281.

*June P. Clayton,* for appellee.

1. The child is of that tender age when a mother's care is more necessary to it than that of a father. The chancellor, who had the parties before him, is in better position to judge the needs of the child in respect to its custody than any one else, and his decree as to custody ought not to be disturbed. 37 Ark. 30, 32; 78 Ark. 195; 82 Ark. 468; 75 Ark. 24.

2. The testimony shows reasonable cause for appellee's leaving appellant, and she should have been granted a divorce on her cross-complaint. Kirby's Dig., § 664; 44 Ark. 429.

McCULLOCH, C. J. Appellant, Dillard Rose, instituted this suit against his wife, Sarah Rose, to obtain a divorce and the custody of their infant son. The grounds for divorce set forth in his complaint are willful desertion without reasonable cause for the period of one year. Appellee filed an answer denying that she had deserted her husband without reasonable cause, and also a cross-complaint praying for divorce on the alleged ground that he was guilty of conduct amounting to indignities which rendered her condition intolerable. The chancellor rendered a decree refusing a divorce either on the prayer of the complaint or the cross-complaint.

The parties intermarried in August, 1903, and in February, 1904, appellee deserted her husband, and has never lived with him since then. In August, 1904, she gave birth to a child, which she consented for appellant to take and keep when it was only two weeks old. Appellant was a farmer, and, being without a home of his own, he took his wife as soon as they were married to the home of his father and mother, where they lived for several months. He rented a farm for the next year, and they moved to it, and lived there until appellee returned to the home of her parents. She expressed to one of the neighbors at the time the reason for leaving, that "the Lord had told her to go." When the baby was born, appellant went to the house to see it, and she told him that he could not continue to come, but that if he wanted to see the child he could take it home with him and keep it. When he went back a week later to get the child, she again said that if he "expected to come to see it she wanted him to take it." At the time the child was born, and afterwards, appellant importuned her to return to live with him, but she refused.

She testified that appellant mistreated her, quarrelled with her without cause, left her to go to a dance while she was sick and returned intoxicated, and forbade her reading her Bible and praying. We are of the opinion, however, that the preponderance of the evidence is against any mistreatment on his part. There is very little corroboration of appellee's claim. One witness testified that she spent the night at the home of appellant and appellee while they were living together and heard him quarrelling during the night. Another testified that appellant admitted

that he had not treated appellee right—that he stood on the hearth and danced and whistled while she attempted to read her Bible. But these witnesses say he expressed sorrow for his conduct, and said he would do better.

We do not think that there is sufficient evidence to sustain a finding that appellant was guilty of misconduct which justified desertion by appellee or which precludes him from obtaining a divorce on account of such desertion. The preponderance of the evidence shows that appellant was not unkind to his wife, and gave her no just cause for leaving him. Though he was probably not wholly free from fault, we can discover nothing in his conduct, judged by the evidence, calculated to render his wife's condition intolerable or to drive her from him.

We think, therefore, that the chancellor erred in not granting him a divorce. We are also of the opinion that the decree was erroneous with reference to the custody of the child. The custody was divided between the two parents—three weeks alternately to the father and one week to the mother. In view of the fact that the mother voluntarily parted with the child when it was very young, and the father has had it since then, we do not feel justified in disturbing the decree awarding the custody to him. And of course the mother should, notwithstanding the fact that she was willing to give the child up, be permitted to see it at reasonable intervals and have an opportunity to enjoy its society. But we deem it inadvisable, for the good of the child, for it to be shifted about at frequent intervals from the custody of one parent to another. Appellant has shown no disposition, as far as we can discover from the evidence, to deprive appellee of reasonable opportunity to see the child, and the general and customary order is sufficient, we think, giving the mother the privilege of visiting the child at reasonable intervals and of having the child to visit her, without specifying in the order any particular interval between visits or length of visits. Of course, if appellant should hereafter violate the spirit of the order, appellee can seek more definite relief in this respect.

The decree is reversed with directions to enter a decree in accordance with this opinion.