FRENCH v. GRAVES.

4-7011                                        168 S. W. 2d 1108

Opinion delivered March 8, 1943.

*Floyd E. Stein,* for appellant.

*Claude E. Love,* for appellee.

ROBINS, J. This suit is a controversy over the custody of Billie Graves, the four-year-old child of the appellant, Ola Graves (now Ola French), and the appellee, Robert Lee Graves. The lower court, on May 7, 1942, granted the appellant a divorce from the appellee on the ground of cruel and inhuman treatment, and also gave her the custody of said minor child. The appellee did not contest the suit for divorce, but, on June 29, 1942, he filed a motion to set aside that part of the decree by which the custody of the child was granted to the appellant, alleging that the decree, as to the custody of the child, was procured by fraud, in that he was assured, when he signed a waiver of service of summons for his wife, that no order affecting the child would be sought or obtained by the appellant, and that he had had the custody of the child since it was six months old, during which time he had been keeping it with his parents, who were properly caring for and rearing the child. The lower court heard the motion on oral testimony and entered a decree modifying the former decree so as to grant the custody of the child to the appellee and to extend to the appellant the privilege of visiting the child at all reasonable times. From this decree the appellant has appealed.

There is little dispute in the evidence in this case. It appeared from the testimony that appellant and appellee separated in February or March, 1942, but that for over three years prior to the separation this child had been staying with the father and mother of the appellee. The appellee worked at a filling station and also as a taxi driver, and, prior to the divorce, the appellant was employed as a waitress in various cafes in El Dorado. Appellee's father and his mother have been living at their present home six miles from El Dorado for over twenty years. Their home is owned by a brother of the elder Graves, and during the time they have lived there they have not been required to pay rent. The mother of the appellee testified that, if her son were given the

custody of the child, she would continue to take care of him as if he were her own and would send him to school and church, both of which were convenient to her home. Neither she nor her husband seemed to evince any ill feeling toward the appellant, and she stated in her testimony that she loved her daughter-in-law. The appellant married again thirteen days after the divorce was granted to her. Her present husband is a civil engineer, who, according to the testimony, was earning a good income. He showed a commendable affection for his stepson, and testified that he would properly rear and educate him. The evidence established that when the child was six months old the appellant took the child to the home of its paternal grandparents, and left it there, where it remained until after the divorce. The appellant, when asked why she had left her child with her father-in-law and mother-in-law, said: "I wanted him to have a settled home and be reared right, and I couldn't do that for him with what Bob (her first husband) made." She further testified that she and her father-in-law got along "all right," and that she left the child there because at that time she could not take as good care of him as they could.

The paramount consideration in this case, as in all other cases involving the custody of a minor child, is the welfare of the child, but the rights and feelings of the parents must also be weighed and due regard given to the natural desire of the parents to have and rear their offspring. It is strongly urged by appellant that, since the appellant has made a second marriage to a man whose position in the world is higher and whose earning capacity is greater than that of the appellee's, she can, in the future, give the child more advantages than it would have by remaining in the custody of its father. In the case of *Verser* v. *Ford, et al.,* 37 Ark. 27, the court said: "It is one of the cardinal principles of nature and of law that, as against strangers, the father, however poor and humble, if able to support the child in his own style of life, and of good moral character, cannot, without the most shocking injustice, be deprived of the privilege by any one whatever, however brilliant the advantage he

may offer. It is not enough to consider the interests of the child alone.'' This doctrine has- been upheld and reiterated by the court in many later cases. It must be remembered, too, that surrounding a child with the com-. forts and luxuries of life does not always assure his happiness and success; and history attests that out of the humblest homes have come many men and women whose deeds and lives have made the world a better place in which to live. This child, when a helpless infant of six months, was put in the care of his grandparents by the appellant herself, and it is not disputed that these grand-parents have given it a good home and proper rearing. No reason is shown by the testimony to doubt that they will continue to bring up the child suitably. The appellee, at the time of the trial, was earning sufficient money to maintain the child comfortably, and there is nothing in the record in this case that would justify a finding that he will not do so in the future. In dealing with a some-what similar situation this court, in the case of *Rose* v. *Rose,* 90 Ark. 16, 117 S. W. 752, said: ''In view of the fact that the mother voluntarily parted with the child when it was very young, and the father has had it since then, we do not feel justified in disturbing the decree awarding the custody to him.''

The chancellor, who saw all the interested parties and heard them testify, doubtless also took into consideration the harm that might be wrought to a child of such tender age by taking it from surroundings to which it had become accustomed and transplanting it in a strange and unfamiliar atmosphere. The appellant herself realized the baneful effect of such changes on a child when she explained her conduct in giving up her six-months-old child by saying ''I wanted him to have a settled home.'' The order in the instant case, as in all cases of this kind, may be modified whenever the situation may require, so that, if, by reason of changed conditions affecting the welfare of the child, the court should find it necessary to take the custody of the child from the father, this may be done. From a careful consideration of all the testimony in this case, we are unable to

say that the decree of the lower court is against the weight of the testimony, and it is, therefore, affirmed.