HAZELIP *v.* TAYLOR.

4-7723                                    190 S. W. 2d 982

Opinion delivered December 17, 1945.

*John C. Sheffield,* for appellant.

*A. M. Coates,* for appellee.

GRIFFIN SMITH, Chief Justice. The question is whether custody of Riley Ray Taylor should be taken from the father and awarded foster parents who are anxious to adopt. The child was between seven and eight years of age when Circuit Court granted the writ of *habeas corpus,* and on hearing directed that the boy be delivered to the petitioning father.

Appellee is forty-six years of age and has ten children. An eleventh child died at birth in 1939; and so did appellee's wife. Thereafter, for several months, Taylor (the father) was unable to provide for the smaller children. Four were placed in an orphanage. Riley Ray was taken by Taylor's brother-in-law and remained in Mississippi for several weeks, but was returned to Helena when the relative found himself burdened with the undertaking. The boy was then placed with Tom and Mamie Hazelip, husband and wife, who are childless. Intention upon their part, seemingly, was that Riley Ray would be reared as a son. They testified that on several occasions Taylor agreed that they might legally adopt, but kept delaying the formality. At one time the Hazelips, apparently feeling that Taylor did not intend to carry out his promise, returned Riley Ray to his father, who in turn placed the child with a family named Tennett. One of the appellants, in describing this move, explained that Taylor would be "in and out": sometimes in Mississippi, at other times in Oklahoma, or elsewhere; but ". . . finally he came back and took the little boy to Walter Tucker's cafe and beer joint and turned [Riley Ray] over to a girl, who took him to Marvell where we found him. He was neglected and dirty and sick, . . . and we took him back home."

Taylor's testimony is that when his wife died in 1939 the economic depression was such that he could not find steady employment, and through necessity surrendered custody of some of the children. He worked at WPA jobs, and hauled wood, but was unable to make a

living for so large a family. When drafted as a soldier he served approximately eight months. Allotments were made for the dependent children. However, it appears that payments extended over a period of less than four months. The Hazelips testified that money received in this manner through the government was invested in bonds in Riley Ray's name, and that none of the income was used by them or spent for the boy's support.

Taylor has remarried and lives at Fresno, California. He testified that he had bought city lots and was constructing (and had nearly finished) a seven-room house, with modern conveniences, etc. The new wife testified that she would bestow a mother's care on Riley Ray.

We think the case turns on the Court's refusal to allow the Hazelips time to procure evidence. Petition for the writ was filed November 20, 1944. The respondents were commanded to have Riley Ray in Court at ten o'clock the morning of November 22nd. When the Hazelips—who had so generously taken the half-orphan into their home —moved through their attorney for a continuance until certain witnesses could be procured, or until depositions could be taken, the Court allowed a period of three hours. The judge felt, no doubt, that protraction of the proceedings would work a hardship upon Taylor and his wife, who were preparing to return to California the following day with a serviceman.

If the case had to be disposed of on the evidence adduced within the limited period given, our holding would necessarily be that no error was committed. Witnesses testified to Taylor's good character, and the Court did not believe the evidence of abandonment was sufficient to deprive the natural father of his child; nor was it. Although (as was said in *French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108) the paramount consideration in determining custody of a child is the infant's welfare, yet at the same time rights and feelings of a parent must also be weighed; and due regard must be given to natural desires. We said in *Verser* v. *Ford,* 37 Ark. 27, "It is one of the cardinal principles of nature and of law that, as against strangers, the father—however humble and

poor—if able to support the child in his own style of life, and [if the father be] of good moral character, cannot, without the most shocking injustice, be deprived of the privilege, . . . however brilliant [the advantages offered] may be."

So, in the instant case, Taylor will not be deprived of his legal and natural rights unless it be convincingly shown (a) that as a father he has forfeited his claim or that circumstances make it impossible for him to fulfill the parental obligation, and (b) that the child's welfare requires alienation. The Hazelips are shown to be excellent people. They are devoted to the boy and appear able and anxious to administer to his needs and to bestow that degree of supervision and helpfulness in the fullest sense that sincere adoptive parents are capable of.

The only evidence we regard as essential to the record relates to Taylor's situation in California. True it is that Taylor's wife testified, as did other relatives. But no opportunity was given appellants to have an independent investigation made; time was lacking in which to ascertain facts, if they existed, to impeach or contradict the interested witnesses.

Whether Taylor's failure for so long a time to provide for four of his children who were in the orphanage, and for Riley Ray, was due to economic conditions he was unable to cope with, or whether, after leaving Arkansas, he negligently permitted the child to remain with appellants, would, in the circumstances, be matters in respect of which the trial court's discretion would be accepted on appeal. If there were no so-called "unknown quantities," and no probability that Taylor and his witnesses, in testifying, at least did full credit to the father's claims, we might say that issues were fully developed. But in a sense the testimony concerning Taylor's status in California, his habits, and his ability to care for so large a family, is *ex parte*. There is no reasonable certainty, based upon a course of conduct fairly established, that Taylor may not again conclude that Riley Ray is burdensome.

Hyatt on Trials, vol. 1, p. 154, says the general practice is that in divorce cases applications for continuances are to be treated more liberally than in certain other kinds of litigation. "The reason for this rule," says the commentator, (page 204, § 166) "is that . . . public policy is involved," there being three interested parties: the plaintiff, the defendant, and the state.

The editorial staff of American Jurisprudence (vol. 27, p. 828, § 107) concurs in the view that where infants are involved the state has a duty to assert its power as *parens patrae*, ". . . so as to prevent injury to the child and to society by the wrongful and negligent conduct of the parent in failing to exercise the proper control"; and, inferentially, in failing to supply necessities.

Since Riley Ray is presumptively with his father in California, no injury other than possible inconvenience can come to Taylor if the judgment is reversed and the cause remanded with directions that reasonable time be allowed the Hazelips to develop their proof. It is so ordered.