Rogers *v.* Moss.

4-9107                                           227 S. W. 2d 630

Opinion delivered March 13, 1950.

*Brockman & Brockman,* for appellant.

*H. K. Toney, Coy M. Nixon* and *Sam M. Levine,* for appellee.

ED. F. McFADDIN, Justice. This case stems from a dispute between appellant, Rogers, and appellee, Koonce, as rival purchasers of a forty-acre tract (hereinafter called "the land"). The appellee, Billie Moss, a Negro, is the common source of title.

## FACTS

In March, 1942, Billie Moss contracted to sell the land to his brother, Andrew Moss, for a consideration of $450. A form of contract was used under which Andrew Moss rented the land from Billie Moss and executed to him nine promissory notes, each for $50, due serially and annually on January 1 of each year thereafter, until all should be paid in full. The contract further provided that if the nine notes, and interest, and subsequent accruing taxes be paid promptly when due, then Billie Moss would execute to Andrew Moss a warranty deed conveying the land; and that if default be made by Andrew Moss in any respect for as long as ninety days, the contract would become void and Billie Moss might repossess the premises. There was no restriction against Andrew Moss assigning the contract.

All nine notes were left by Billie Moss with Mr. Russell Hollis, whom he authorized to receive the pay-

ments and in turn pay the proceeds to a designated creditor of Billie Moss. It is conceded by all parties that Andrew Moss made the payments to and including January, 1945, but a disputed question of fact is presented as to defaults after that date. On January 10, 1948, Andrew Moss made the following endorsement on the contract:

"For and in consideration of $277.73, the within contract is assigned to F. J. Rogers this the 10th day of January, 1948.

(Signed) Andrew Moss."

Appellant, Rogers, ascertained from Russell Hollis that the balance due on the contract was $277.73 (the last four notes and interest and an insurance item); and when Rogers paid this amount to Hollis, Andrew Moss made the above mentioned assignment, receiving no money for it. At one place in the record, Rogers indicated that he gave Andrew Moss the right to repurchase from him; and at another place Rogers stated that he gave Andrew Moss the free rent of the premises for the year 1948. At all events, the $277.73 mentioned in the assignment was paid by Rogers·to Hollis and by Hollis to the previously designated creditor of Billie Moss. When Rogers demanded a deed from Billie Moss, in accordance with the contract, the latter claimed that Andrew Moss had never paid the notes due in January, 1946, and 1947; that by mutual consent Billie and Andrew had cancelled Andrew's claimed rights under the contract; and that Billie had repossessed the land and allowed Andrew (his elder and disabled brother) to remain in possession of the house as a brotherly act. Billie Moss, through a real estate broker—Kimber, who seems to have been his *de-facto* banker—sold the land to appellee, Koonce, by deed of April 12, 1948, and Koonce placed a tenant in possession of the land.

On April 29, 1948, Rogers filed this suit, seeking to compel Billie Moss to specifically perform the Andrew Moss contract held by Rogers. Koonce and his tenant, as well as the real estate agent—Kimber—were made

defendants. The issues were joined, the evidence was heard *ore tenus,* and a decree was rendered, dismissing Roger's complaint for want of equity. This appeal ensued.

## OPINION

Appellant insists that the contract between Billie Moss and Andrew Moss was a *contract of sale,* citing *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989, and other cases, many of which are listed in our recent case of *White* v. *Page, ante,* p. 632, 226 S. W. 2d 973 (decided February 13, 1950). Appellee claims that the contract between Billie Moss and Andrew Moss was a *rent contract* and cites *Thomas* v. *Johnston,* 78 Ark. 574, 95 S. W. 468, and *Smith* v. *Carter,* 213 Ark. 937, 214 S. W. 2d 64. It is unnecessary for us to decide between these contentions because even if the contract was one of sale (as claimed by appellant), nevertheless Andrew Moss had surrendered his rights thereunder long before his dealings with Rogers.

Both Billie Moss and Andrew Moss testified that Andrew failed to make the payments due in January, 1946, and thereafter; and that in 1946 they cancelled the contract by mutual consent, and that Billie Moss allowed his elder and disabled brother, Andrew, to remain on the land as a brotherly act. The Negroes spoke of the contract as being ''dead'' because of the defaulted payments. Mr. Kimber's testimony supports the contention that the contract was cancelled by mutual consent. Further, the fact that Billie Moss, in 1946, listed the land with Kimber to sell, lends credence to the conclusion that Andrew Moss' contract had been terminated long before Rogers paid the $277.73 on January 10, 1948. So, on the facts, we cannot say that the Chancellor was in error in holding—as he necessarily did—that the contract was cancelled by mutual consent. This is one of those cases where the evidence is in the sharpest of dispute; and from a reading of the entire record, we cannot say that the Chancellor's decision is contrary to the preponderance of the evidence. See *Murphy* v. *Osborne,* 211 Ark. 319, 200 S. W. 2d 517.

Appellant, however, urges that the cancellation between Andrew and Billie was oral and therefore insufficient; and in support of such contention appellant cites *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989, in which we held that a parol rescission of a contract for the sale of land was within the Statute of Frauds. But even if the Moss contract be one for the sale of land, nevertheless it must be remembered: that this is the type of case in which the Statute of Frauds has to be pleaded, if relied on as a defense, and it was not so pleaded by any party in the present case.

The case at bar is similar in many respects to that of *Williams* v. *Jones,* 208 Ark. 303, 186 S. W. 2d 160, in which a contract for the sale of land had subsequently been rescinded by parol. Mr. Justice McHANEY, speaking for this Court, said:

"On the question of the right to cancel by parol agreement a prior written contract of sale and purchase of real estate, appellants cite *Carter* v. *Muns,* 55 Ark. 73, 17 S. W. 445, and *Friar* v. *Baldridge,* 91 Ark. 133, 120 S. W. 989. . . . Appellants did not plead the statute of frauds as an affirmative defense in their answer and we have held that it cannot be availed of unless pleaded. *S. H. Kress Co.* v. *Moscowitz,* 105 Ark. 638, 152 S. W. 298, and cases there cited. . . . We have several times held that a verbal rescission of a written contract is not invalid as being within the statute under certain circumstances. In *Atkinson* v. *Thomas,* 138 Ark. 47, 210 S. W. 779, it was held that such a 'rescission of an option contract to purchase land is available in equity to repel a claim upon that contract.' See, also, *Eagle* v. *Pettus,* 109 Ark. 310, 159 S. W. 1116; *Robertson* v. *Lain,* 168 Ark. 210, 269 S. W. 574."

There is, however, one point that necessitates a reversal; and that relates to the $277.73 which Rogers paid to Hollis, and which Hollis paid to a creditor of Billie Moss. As to the payment by Rogers, there has been a complete failure of consideration, and he is entitled to a return of his money. Kimber, the real estate man—and

*de facto* banker for Billie Moss—testified that he offered to return the money to Rogers; but the decree makes no reference to such tender being made in court. Therefore, the decree is reversed and the cause remanded for the Chancery Court to enter judgment that Rogers, upon surrender by him of any check he may have, recover of Billie Moss and Kimber the $277.73, without interest. In all other respects the decree is affirmed. The costs of this appeal are assessed against Billie Moss and Kimber; the costs of the lower court are assessed against Rogers.