POWELL *v.* WOOLFOLK.

5-2450                              349 S. W. 2d 657

Opinion delivered October 2, 1961.

*Donald Poe,* for appellant.

*J. H. Evans,* for appellee.

CARLETON HARRIS, Chief Justice. This is a child custody case. Appellant, Troy Gene Powell, shortly before entering the United States Navy, obtained a divorce from his wife, Winnie Sue James Powell, in the Scott Chancery Court, said decree being entered on September 29, 1958. The custody of the two minor children, born of the marriage, Debra, age three, and Rebecca, age five, was placed in Mrs. Powell. Appellant obtained an allotment for the benefit of the children, which presently amounts to $97.50 per month. On June 4, 1960,

appellee married James Woolfolk. On November 10, 1960, appellant filed a motion asserting that his ex-wife had married Woolfolk; that the latter had been confined to the Arkansas Tuberculosis Sanatorium, but was away without leave, and was living in the home with the children; that the condition of Woolfolk "is such to endanger the health and lives of the children; the condition has changed to such an extent to warrant a change of custody to benefit the children." A hearing on the motion was apparently set for December 15th. According to testimony of Mrs. Woolfolk, sometime prior to that date she consulted with her attorney, who advised her to turn over the children to S. E. and Lillie Powell, parents of appellant herein. She notified the Powells to send for the children, stating that her reason for doing so was "because I did not have any witnesses. They were sick." The Powells took the children to their home. On January 27, 1961, a hearing was held on the motion.[1] At the conclusion of such hearing, appellant's motion to modify the decree as to custody was denied, and dismissed, the court ordering that the custody of the two children remain in appellee, and directing that the Powells deliver the children to Mrs. Woolfolk by noon on January 30th. From such decree, comes this appeal. Four separate points are raised in urging a reversal of the decree, but we shall only fully discuss one, inasmuch as we are of the opinion that the evidence warranted a change of custody.

The most noteworthy evidence related to James Woolfolk, husband of appellee. Dr. T. H. Lipscomb, superintendent of the Arkansas Tubercular Sanatorium, testifying from the records at the sanatorium, stated that Woolfolk, who was born in 1929, had been admitted to the hospital on several occasions. First admission was on July 17, 1959, and Woolfolk remained until August 31, 1959; he was readmitted on September 15, 1959, and left on October 6, 1959; again readmitted on January 29, 1960, and left the first part of June. The

---

[1] A response was filed by Mrs. Woolfolk denying that there had been such a change of conditions as to justify awarding the custody of the children to appellant. According to the record, this response was not filed until three days after the hearing, January 30th.

record reflected that he left in October against medical advice; also that he left the Veteran's Hospital on two occasions against medical advice. Dr. Lipscomb diagnosed Woolfolk's condition as "pulmonary tuberculosis, far advanced, bi-lateral cavities," that Woolfolk has "a positive sputum," and "when the sputum is positive, he is dangerous." The doctor testified that Woolfolk was admitted to the sanatorium under Act 161 of 1955.[2] He further stated that the patient had left the hospital on several occasions without permission. Lipscomb testified that when Woolfolk left the early part of June, 1960, the latter had been given a three-day pass to go to Fort Smith, but had not returned at the expiration of the three days. He was returned on November 16th, and was still in the hospital at the time of the hearing, except for "a few minutes when he and another patient broke out and left, but they were picked up here in Booneville and brought back to the sanatorium."

Dr. G. M. Pierce, Medical Director of the Arkansas Tubercular Sanatorium, testified that Woolfolk constituted a danger to people with whom he was associated, and that his association with his stepchildren in the home

[2] Ark. Stats., § 82-612. "When the state or any county or city health officer shall have reasonable grounds to believe that any person has tuberculosis in active state or in a communicable form, and who will not voluntarily seek a medical examination or treatment, then it shall be the duty of said health officer to make an investigation of such person to determine whether the environmental conditions of the person, or the conduct of the person, is suitable for proper isolation, or contagious control of the case by any type of local quarantine.

§ 82-613. "If the health officer finds that the circumstances are not suitable for proper isolation or contagious control of the case by any type of local quarantine, and said person will not voluntarily seek medical treatment and is a source of danger to others, he shall petition the Probate Court of the county where said person is found, to order the admission of the person to any state owned and operated tuberculosis hospital or sanatorium.

§ 82-614. "The health officer shall set forth in a petition a summary of the factual basis of the determination that the circumstances are not suitable for proper isolation or contagious control of the case by any type of local quarantine, and that said person will not voluntarily seek medical treatment and is a source of danger to others.

\* \* \*

§ 82-617. "If upon hearing of the petition the court finds that the circumstances are not suitable for proper isolation, or contagious control of the case by any type of local quarantine, and that said person will not voluntarily seek medical treatment and is a source of danger to others, the court shall order the commitment of said person to a hospital or sanatorium as petitioned for."

would be detrimental to their welfare. When asked as to the "outlook or prospectus of his condition," the doctor answered:

"I believe, all facts being considered, would list this as being guarded, in other words, considering the various facts, and his actions and the manner in which he has acted and how he acts at the best would make this a very guarded situation. One does not feel to be encouraged about the final outcome."

The proof reflected that Woolfolk had been transferred to the surgery building in contemplation of an early operation, and Pierce testified that improvement "will depend on how his surgery turns out and on how he conducts himself in the future." Further proof on the part of appellant reflected that appellee and her husband had lived, together with the children, in a four-room house, heated by a wood heater. Water came from a well. The drinking water was kept in a bucket with a dipper, and according to Mrs. Powell and Mona Faye Wilson, a sister of appellant, Mr. Woolfolk and the children used the same water bucket. They both testified that he spat in cans on the floor. They likewise testified that the home was not well taken care of, unsanitary, and the children were undernourished and not properly looked after. The testimony in the preceding sentence was disputed by appellee and her witnesses.

Herman McCormick, sheriff of Yell County, testified that he had arrested Woolfolk for drunkenness in October, 1960, and found a bottle of "moonshine" whiskey on the latter. According to the sheriff, Woolfolk was fined $99. McCormick stated that he later received a call from a druggist, advising that Woolfolk "was giving him a lot of static about wanting some light narcotics." Further, that Woolfolk had given several checks that were not good.

According to appellee, she had given the little girls proper care, and while working at the sanatorium (from October 7, 1959, to March 27, 1960), left them in the care of a Mrs. Sharp. She paid the latter $60 per month to

take care of the children. Mrs. Woolfolk stated that her husband receives $100 a month (apparently for service disability), and though her husband gave her most of the proceeds from the check, the amount was not sufficient for her needs. Appellee pointed out that her husband "has children by a former marriage and they are supported."[3] She admitted that the entire family stayed in the same house, ate at the same table, and the children were closely associated with her husband while they were living together. Mrs. Woolfolk testified that she, of course, knew that Mr. Woolfolk was afflicted with tuberculosis, but she did not know he was "positive." It was her view that her husband would leave the hospital if he were able to get away, but she stated that she did not intend to live with him as long as he had tuberculosis. She testified that she was not presently planning to get a divorce, but subsequently stated, "I will if it is necessary to get my children."

Ellen James, mother of appellee, testified in appellee's behalf, and stated that her daughter took good care of the children. Mrs. Belle May testified that Mrs. Woolfolk's home was clean on the occasions when she was present, and that Mrs. Woolfolk was good to the children and took proper care of them. Mrs. Lucille Pledger, worker for the Welfare Department, testified she had made an investigation of the home life and living conditions relating to appellee, and that such investigation showed that the children were not being neglected by their mother; that Mrs. Woolfolk loved her children; that her morals were good, and that she was the daughter of a highly respected family. She stated that prior to Mr. Powell's enlistment in the Navy, he did not support the children. Admittedly, she did not visit the home in the process of making the investigation, though she stated she had, in the past, been in the home. She testified that the purpose of her investigation was to determine whether the people in the community thought the minor children were being neglected. The witness stated that the report she had submitted to the court did not

[3] Also, a child was born of the marriage between appellee and Woolfolk on November 26, 1960.

show that Woolfolk was suffering from active tuberculosis. By Mrs. Pledger's own statement, her testimony was based on what people had told her, in her words, "from reliable people in the community." While it has no bearing on the conclusions reached in this cause, it might be pointed out that most, if not all, of Mrs. Pledger's evidence was inadmissible because it was hearsay. The report itself was admittedly based on hearsay evidence, and we have held this evidence inadmissible. See *Trannum* v. *George,* 211 Ark. 665, 201 S. W. 2d 1015.

Appellant's parents testified that they would be glad to take the Powell children into their home, and that they had agreed with their son to take care of Debra and Rebecca while he was in naval service. They stated that they were financially able to provide a good home, and would like to have the opportunity to do so. The proof reflected that the Powells had kept the children for a period of about six weeks in 1959. Mr. Powell is employed by the United States Forest Service.

We are firmly of the view that the best interests of the children require a change of custody. This conclusion is reached, not on the basis of immorality or incompetence to care for the children on the part of the mother, but rather, because of the health hazard occasioned by her marriage to Woolfolk. Of course, while it would appear from the testimony of the sheriff that Woolfolk would not be a proper influence in the home, our principal concern relates to the constant and daily exposure to tuberculosis. Though appellee stated that she would not live with Woolfolk again while he was still so afflicted, we are not persuaded that this simple statement solves the problem. After all, though cognizant of his illness, Mrs. Woolfolk did permit these children, for a considerable period of time, to live in the home with her husband, and eat and drink at the same table. The record clearly reflects that it is extremely difficult to keep Mr. Woolfolk in the sanatorium, and appellee agreed that her husband would likely leave the hospital if he were able to get away. It is true that we have

stated that custody should not be taken from a mother unless there are compelling reasons for so doing. See *Perkins* v. *Perkins,* 226 Ark. 765, 293 S. W. 2d 889. But there is a stronger consideration—that of the welfare of the children. In *Sindle* v. *Sindle,* 229 Ark. 209, 315 S. W. 2d 893, we said, ''As has been so often stated by this Court, the paramount and controlling consideration in all custody cases is the child's best interest and welfare.'' The welfare of the children being of prime importance, it is felt to be essential that Debra and Rebecca be removed from any possible association with Mr. Woolfolk, and we hold that the second marriage so altered circumstances (under which the original decree was entered) as to justify a change in custody.

Appellee points out that the grandparents are not parties to the record, and that accordingly, no proper order can be entered giving to them the custody. We do not agree. The petition was filed by appellant, Troy Gene Powell, and his parents testified that they had agreed to keep and take care of the children while he was in service.[4] Of course, appellant is not in a position to physically care for the children until his naval service has ended. In *French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108, the father filed a petition for change of custody. His parents, who were not parties to the record, testified that if the court should award the custody to their son, they were willing to take care of the child as their own. The court approved this arrangement, and awarded custody to the father.

For the reasons herein set out, the decree of the Chancery Court is reversed, and the cause is remanded with directions to award the custody of the two minor children, Debra and Rebecca, to their father, Troy Gene Powell; however, with the provision that they shall remain within the jurisdiction of the court, in the home of Mr. and Mrs. S. E. Powell, parents of appellant, and, of course, with visitation rights to the mother.

It is so ordered.

---

[4] Of course, Mr. and Mrs. Powell were present in person before the court, and subjected themselves to the jurisdiction thereof.