256

Opinion delivered November 26, 1963.

*McKnight & Blackburn* and *Marcus Fietz*, for appellant.

*Shaver & Shaver*, for appellee.

Carleton Harris, Chief Justice. This is a child custody case. Billy D. Thompson and Frances Juanita Thompson were married in October, 1951. Two children were born of the marriage, Billie Juanita Thompson (born in 1952), and Jimmy D. Thompson (born in 1955). Billy Thompson has served in the Air Force for a long number of years, and both children, except for a period of about five months,[1] have lived with their maternal grandparents, Mr. and Mrs. Sam Blake, residents of Birdeye. Frances obtained a divorce from Billy in April, 1960, and was awarded custody of the children, the husband being directed to pay $100.00 per month for child support. This order has been complied with. Just prior to the divorce, Frances and Billy had entered into a sepa-

---

[1] During this period, Billy was stationed at Bossier City, La., and Frances and the eldest child lived with him during this time.

ration agreement (March, 1960) under which the father agreed to pay the $100.00 per month, and the agreement further provided that should Frances die before the children reached their majority, Agnes Thompson (now Bornhoft) mother of Billy, would have the custody of the children. After the divorce, Frances obtained a job in Wynne, and continued to live with her parents, together with the children.

In May, 1962, Billy D. Thompson, who is still in military service, and his mother, Agnes Bornhoft, instituted suit, asking that the custody of the children be taken from Frances and awarded to Agnes Bornhoft. Appellee moved to dismiss the cause in so far as Mrs. Bornhoft was concerned, contending that the suit must be brought in the name of the father. In response, appellant contended that the suit was a new action, independent of the original divorce decree, and that Mrs. Bornhoft had a right to bring the action. Counsel for appellant then withdrew the father, Billy D. Thompson as a plaintiff, and the complaint was dismissed as to him. The court proceeded to hear the custody matter with Mrs. Bornhoft as the plaintiff. After hearing a number of witnesses, the court rendered its opinion, finding that Mrs. Bornhoft was not a fit person to have custody of the children; further, that the mother, Frances Juanita Thompson, was likewise unfit to have the custody of the children. The court further found "that for almost the entire life of both children they have lived in the home of their maternal grandparents and that both the grandmother and the grandfather indicated a willingness from the stand to take the children and maintain them in their home and under the facts and circumstances as developed by the testimony the children in the opinion of the Chancellor will be much better cared for by these two elderly people. The father will continue to make payment of $100.00 per month which will be paid to the maternal grandparents and they shall have the exclusive custody of said children pending the further orders of this court." The court then entered its decree, dismissing the petition of Mrs. Bornhoft for custody, and placed the children in the custody of the Blakes. From the de-

cree so entered, appellant brings this appeal. It might first be mentioned that appellee contends that, though the suit was filed as a separate action, it actually is an effort to modify the original decree, and that Mrs. Bornhoft, the grandmother, is not a proper party to bring the action; that the effort to modify the decree can only be properly brought by the father. It is not necessary that this question be discussed in order to reach a determination in this litigation.

The court found that Mrs. Bornhoft "is not such a person with whom the two children should be permanently placed," and likewise found that the mother was not a fit and proper person to have the custody of her children. No good point would be served in detailing the testimony upon which the Chancellor based these conclusions. Each side called several witnesses, and the good qualities, as well as the bad, were presented to the court during the evidence. Mrs. Bornhoft vigorously contends that the evidence does not support the court's finding relative to her unfitness to have custody of the children,[2] but there was evidence which supported this conclusion, and we have said that we will not reverse the finding of the Chancellor unless such finding is against the preponderance of the evidence. *Dierks Lumber and Coal Co.* v. *Horne*, 216 Ark. 155, 224 S. W. 2d 540; *Rogers* v. *Moss*, 216 Ark. 838, 227 S. W. 2d 630. The parties and the witnesses were all observed by the Chancellor, who thus had the opportunity to note their demeanor on the stand, their manner of answering the questions, and he was, accordingly, in much better position to judge the truthfulness or untruthfulness of the statements made by the parties and witnesses. We are unable to say that his finding that Mrs. Bornhoft was not a proper person to have custody of the children, is against the preponderance of the evidence. Having made this finding, it is

---

[2] Mrs. Bornhoft also points to the separation agreement (mentioned in Paragraph 1 of this opinion), wherein Billy and Frances agreed that if Frances should die before the children reached their majority, Mrs. Bornhoft "would have custody of the children." Of course, Frances has not died, but irrespective of that fact, the agreement is meaningless. We have held that agreements between litigants as to the custody of children are not binding upon the court. *Bishop* v. *Lucas*, 220 Ark. 871, 251 S. W. 2d 126.

doubtful that Mrs. Bornhoft actually has the right to question the disposition of the children as ordered by the court. This is not a matter wherein the father of the children is dead, mentally incompetent, an inmate of the penitentiary, or for any other reason unable to seek the relief of the courts. Nor is it a matter where the father has abandoned the children,[3] and thus created the necessity for other close relatives to interest themselves on behalf of the minors. Here, the father voluntarily withdrew as a party to this litigation, though he testified in behalf of his mother. He has not questioned this decree, nor has the mother of the children questioned it.

However, assuming, without deciding, that Mrs. Bornhoft is a proper party to question the court's order in placing the children with the maternal grandparents, we proceed to discuss appellant's contention that this order was erroneous. This contention is largely based upon the fact that Mr. and Mrs. Blake were not parties to the action. Appellant relies upon language appearing in the case of *West v. Griffin,* 207 Ark. 367, 180 S. W. 2d 839. There, custody of the minor child was vested in the paternal grandparents, who were not parties to the action (the father of the children being the party), by the trial court. This court, on appeal by the mother, reversed the trial court and awarded the custody to the mother, finding that she was a proper person to have the custody. The language appearing in the opinion relied upon by appellant is as follows:

"It will be remembered that this is not a case in which the court reaffirmed its order awarding custody of the child. That order was modified in the decree from which is this appeal and the child's custody was awarded to persons who were not parties to the original proceeding and are not parties to this proceeding. We think this was error."

This statement was *dictum* since the opinion makes clear that this was not the basis of our determination.

---

[3] As of the time of this trial, Billy Thompson had consistently complied with the order of the court to pay the $100.00 per month for the support of the children.

Rather, we found that there was no evidence which indicated that the mother had abandoned the child, or that she had, at any time, ceased to be interested in its welfare. We likewise stated in *West:*

"This is not a case where a child has been permitted to remain in certain surroundings for a period of time long enough to become so accustomed to its surroundings as to make it unwise to remove it. We do not have here the situation that was shown in the case of *French* v. *Graves,* 205 Ark. 409, 168 S. W. 2d 1108, because this child had been with the grandparents only two or three weeks at the time of the rendition of the decree from which is this appeal."

As previously pointed out, in the case presently before us, the children have lived with the Blakes, with the exception of a few months, for the entire period of their lives. In *Powell* v. *Woolfolk,* 233 Ark. 893, 349 S. W. 2d 657, we awarded the physical custody of the children to paternal grandparents, who were not parties to the case, the actual order entered by the trial court reciting that the father was given custody; however, the father was not in a position to take care of the children, and they were actually placed in the possession of the grandparents. In the opinion we pointed out that these grandparents were present in person before the court, and subjected themselves to the jurisdiction thereof. Here, also, the grandparents were present in court, agreed to take the children, and subjected themselves to any further orders that the trial court might see fit to enter.

Of course, in matters relating to the custody of minor children, we have said many times, so many, in fact, as to require no citation of authority, that the welfare of the children is the primary consideration. In the South Carolina case of *Koon* v. *Koon,* 28 S. E. 2d 89, the same contention was made by appellant, but rejected by the South Carolina Supreme Court. From the opinion:

"Claude Koon raises the legal point that the judgment appealed from was beyond the scope of the issues raised by the pleadings. It is urged that the real contro-

versy was and is between him and his wife with reference to the custody of the child; that the maternal grandparents were not even parties to the proceeding; that the paternal grandparents defaulted; and that the court erred in not awarding custody to him.

"The controlling reason for committing the custody of the child to the grandparents, as shown by the order, was because this was in accord with the child's highest good. This was entirely within the power and discretion of the County Judge under the facts in this case."

It follows, from what has been said, that we are unable to conclude that the Chancellor's findings were against the preponderance of the evidence, or that he exceeded his authority or power in granting custody to the Blakes. Of course, the father can always petition the court for a modification of the present decree if circumstances indicate that a change should be made.

Affirmed.