714

THOMAS ALBERT COX *v.* RITA SUE (COX) TUCKER

5-5693                                    474 S.W. 2d 675

Opinion delivered January 10, 1972

*John F. Gibson, Jr.,* for appellant.

*Sam Bird,* for appellee.

CARLETON HARRIS, Chief Justice. This is a child custody case. Thomas Albert Cox, appellant herein, and Rita Sue (Cox) Tucker, appellee herein, were divorced on May 9, 1966. The parties were the parents of two minor children, Christopher Michael Cox, and Shelly Joan Cox, and appellant was given custody of these children.[1] They subsequently re-married but were again divorced on November 1, 1966. At that time, appellee was given custody of the two children. On January 7, 1967, the court modified the custody order, placing custody of the children with appellant. On June 9, 1967, appellee married Eddie Tucker. In October of that year, custody was again given to the mother. In June, 1968, appellee separated from Tucker. The record does not reflect how long the separation lasted, but it is evident that they did resume the marital relationship since the record reflects that they again separated in January, 1969. Here, the transcript does not reveal the date of their reconciliation, but another separation occurred in March, 1970. On June 6, 1970, appellant, who had visitation rights,

---

[1] Christopher Michael Cox was born January 4, 1964, and Shelly Joan Cox was born June 21, 1965.

picked up the children, but did not return them because appellee was in the hospital, recovering from an overdose of pills which had apparently been taken in an attempt at suicide. On June 15, appellee obtained a divorce from Tucker, and about a week later disappeared, leaving a note for her mother, in which she stated "Right now I don't know exactly where I'll be when you hear this letter but just leave me alone and I'll let you know where I'll be. If you or Daddy ever again, as long as I live try to boss me then I will get my things out of here and never come back".

On June 27, 1970, the court gave temporary custody to appellant. Actually, appellee had gone to Little Rock, where she obtained a job, working about a week before effecting a reconciliation with Tucker. On July 7, the June 15 divorce decree was annulled and appellee and Tucker resumed the marriage state. In September, 1970, pursuant to a petition for permanent custody filed by appellant, another hearing was conducted and the court then took the matter under submission. In December, the court entered its findings of fact and on February 1, 1971, entered its order restoring custody to appellee (with certain visitation rights to appellant), and from this order, appellant brings his appeal. In seeking a reversal, it is urged that the court erred in awarding custody to the mother, and failed to recognize that the welfare of the children is the controlling factor in awarding custody.[2]

Without detailing the testimony, let it be stated that the record clearly establishes a lack of stability on the part of appellee, and this fact was recognized by the chancellor in an opinion rendered at the time the last order was entered. Among other things, the court stated:

"The rule of the absolutes is still the ruling authority in this jurisdiction, that is, 'In the absence of testimony showing the mother to be an unfit person she should have custody of the infant', which rule is sup-

---

[2]No brief was filed by appellee.

ported by the case of *Northcutt* v. *Northcutt, supra.* Thus, the burden of proof is cast on the petitioner to show that the petitioner[3] is an 'unfit person'. The proof does not show unfitness by reason of immorality, mistreatment of the children, or abandonment of them. The proof of unfitness runs to insanity and emotional instability. The insanity relates to incidents where respondent sought to take her life. The existence of the desire is not made to appear or that she has ever been adjudicated or committed for such disability. The emotional instability relates to general behavior, which includes, separating, divorcing and resumption of marriage relationship with husband, changing jobs, having fainting spells, receiving psychiatric treatment, apparently departing to unknown places, leaving mystifying letters on departure, and nervous temperament. The Chancellor's research did not uncover precedent to support the above factual background as a basis for the unfitness of a natural mother. The best interest of the children in issue has been a continuing concern of this Court since 1967, and all of which has been occasioned by the erratic actions and conduct of the respondent."

These findings were supported by the record. It has already been mentioned that appellee had been hospitalized for an overdose of pills, this occurring in the latter part of May, 1970. It is not clear how long she remained at St. Vincent's Hospital. Mr. Tucker, her present husband, also testified that his wife had tried to commit suicide by jumping from the automobile on one occasion. Mrs. Tucker received psychiatric treatment, and it also became necessary that a child psychologist be consulted with reference to the little boy, Christopher. The record further reflects that Mrs. Tucker would obtain a job, but would work only a short time before quitting, and of course, her marriage history with both husbands indicates instability. As stated by the chancellor, there is no evidence that appellee was immoral in any respect, and the learned judge apparently felt that immorality on her part must be shown before the court would be justified in giving custody to the father. Certainly, his findings, quoted above, reflect that, from

---

[3]This was an inadvertent error, and should read "respondent".

the standpoint of stability, appellee was not a proper person to have custody. That he was disturbed was reflected by his statement:

"The Court with great misgivings feels constrained to follow the experience tested rules of the absolutes in this action."

While it is true that we have. stated in numerous cases that a mother is given preference in cases involving the custody of small children, we have also said on many occasions that the controlling consideration is the welfare of the children; *Bornhoft* v. *Thompson*, 237 Ark. 256, 372 S. W. 2d 616. In *Stephenson* v. *Stephenson*, 237 Ark. 724, 375 S. W. 2d 659, this court stated:

"In custody matters the unyielding consideration is the welfare of the children. It matters not to this court which of the parties 'wins' custody, so long as the children are the ultimate winners of good care and home."

In *Haller* v. *Haller*, 234 Ark. 984, 356 S. W. 2d 9, we said that the welfare of the children is the "polestar".

That then being the paramount consideration, we think the court erred in re-investing custody of the children in the mother. To be more specific, though Mr. Tucker testified that his wife's condition was, at the time of the trial, more stable than at any time over a three year period, [4] we do not think it has been demonstrated that her stability has yet reached the point that it can be said the children would be assured of the care to which they are entitled.

The morality of neither party is questioned in this hearing, and the court found "That all during this period the petitioner (appellant) has always stood in the wings to accept his parental responsibility when the need arose". Mr. Cox has re-married, and his present wife, Gladys, testified that she treated these two children in the same manner that she treated her own child by a previous marriage. Her evidence was not attacked. The

---

[4]Tucker stated: "She is quite a bit more stable."

present Mrs. Cox quit work some time ago in order that she could stay home and keep the children.

Circumstances in this case are distressing, but we think the record clearly reflects that the welfare of Christopher Michael and Shelly Joan demands that they be placed in the custody of the father.

Reversed, with directions to the Drew County Chancery Court to enter an order not inconsistent with this opinion.