Doris A. BUNT *v.* Rodney Earl BUNT, Sr.

87-121                                    744 S.W.2d 718

Supreme Court of Arkansas
Opinion delivered February 16, 1988

*Cynthia J. Brandon*, Central Arkansas Legal Services, for appellant.

*Richard A. Garrett*, for appellee.

DAVID NEWBERN, Justice. The appellant, Doris A. Bunt, was awarded a divorce from the appellee, Rodney Earl Bunt, Sr. Mrs. Bunt contends the court erred in declaring that a personal injury claim of Mr. Bunt was not marital property and in thus refusing to consider awarding any part of it to her. She also contends the court erred in awarding custody of the two children of the marriage, Rodney, Jr., who was 22 months old at the time of the trial, and Alicia, age 10 months, to Mr. Bunt. She is correct as to the personal injury claim, but we find no error in the custody award, thus the decree is affirmed in part, reversed in part, and remanded.

The parties separated in June, 1986, when Mrs. Bunt took the children and moved to the battered women's shelter. She filed for divorce on July 16, 1986. Sometime in July or August of that year, Mr. Bunt was injured in an automobile accident. He consulted an attorney, and, in answer to an interrogatory, stated

that he expected to settle his personal injury claim with an insurance company. At the time of the divorce hearing on October 22, 1986, he had filed no action on the claim and had been offered no settlement by the insurance company. His attorney in the divorce proceeding, who also represented Mr. Bunt on the personal injury claim, told the court the personal injury action would not be filed until Mr. Bunt had undergone further medical examination.

Mrs. Bunt testified that Mr. Bunt had a bad temper and that he would drink too much and would carry a club with which he threatened her and struck her. He worked off and on during the marriage and was fired from one job, she said, for wrecking a company truck while drinking. She testified that Mr. Bunt took the children from her as she was on her way to a grocery store from the women's shelter. Since then, she has been to visit her children at Mr. Bunt's parents' home where they live with Mr. Bunt. She related an occasion when Mr. Bunt's father struck Mr. Bunt during an argument which arose when Mr. Bunt refused to let Mrs. Bunt leave the premises. She testified that Mr. Bunt had been drinking on that occasion, and on another occasion when she returned the children from a visit, he reached in the car for one of the children, picked her up in her car seat, and dropped her.

Mrs. Bunt testified further that she was living in a mobile home with her unmarried, 36-year-old uncle who would help her care for the children if she were given custody of the children. He has "bad back" trouble and works periodically as a painter. She has worked for short periods at various waitress jobs, and is now working at a grocery store some 33 hours per week and expects to work 40 hours per week after her probationary employment period.

Mr. Bunt testified that he did have "a club" when he and Mrs. Bunt were living together. He said "it was a pick handle" and that he did not use it to threaten her, but he did slap her once. He testified that Rodney, Jr., had his hand broken since the separation. Mr. Bunt was unaware of the accident when it happened, but has since concluded that it occurred when he closed a bedroom door, unaware that Rodney, Jr., was following

him out of the room. Since the separation, he testified, he has only drunk alcohol to the extent of two cups of beer, which were given to him at an arm wrestling match by his brothers to "settle his nerves."

He testified that he had been injured in a wreck after the separation and had been on crutches and unable to work except in a very limited way. He also testified that Mrs. Bunt was a very poor housekeeper during the marriage. She left dirty diapers as well as dirty dishes around their home, and did not take good care of the children.

Both of Mr. Bunt's parents testified. His mother testified about the bad diaper rash Alicia had when she came to live with them. His father confirmed the testimony about the altercation he and his son had had, but denied that Mr. Bunt had been drinking.

Mr. Bunt's mother testified that when Alicia came to live in their home her diaper rash was so bad it looked as if it were about to bleed. To clear up the rash they had to bathe Alicia every four hours and leave her diaper off. In addition, medical records were introduced showing that Alicia's arm was injured while she was in Doris Bunt's care. Doris Bunt confirmed that Alicia had been hurt by Doris Bunt's brother, resulting in a fluid build-up behind her elbow.

There was testimony corroborating allegations both of Mr. Bunt's misbehavior and Mrs. Bunt's poor housekeeping and child care.

## 1. The personal injury claim

In his decree, the special chancellor ruled that any compensation to be received by Mr. Bunt from his personal injury claim was not marital property because it was not acquired during the marriage and stated, "[t]he Court notes factual differences in this and the *Liles* or *Goode* cases as to the certainty of the award or the offers of settlement."

The issue here is whether a personal injury claim which has accrued to a party to a divorce action but which has not been made

the subject of a complaint or offer of settlement should be included in marital property as defined in Ark. Code Ann. § 9-12-315(b) (1987). The statute defines "marital property" as "all property acquired by either spouse subsequent to the marriage" with certain specific exceptions stated following the general definition. Until 1987, none of the statutory exceptions to the definition referred to personal injury claims.

In *Goode* v. *Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985), we decided that a workers' compensation claim which accrued during the marriage but which had not yet been adjudicated at the time of the divorce was marital property. To the extent it might have applied to the contrary, we overruled *Lowrey* v. *Lowrey*, 260 Ark. 128, 538 S.W.2d 36 (1976), which had held that a personal injury claim was not included in the definition of "marital property" under an earlier statute. In *Goode* v. *Goode, supra*, the workers' compensation claim had been filed, and a settlement offer had been made. We followed the reasoning in *In re Marriage of Dettore*, 86 Ill. App. 3d 540, 408 N.E.2d 429 (1980), where the court said it would not countenance a result which would allow a workers' compensation claimant to "protract the arbitration for . . . [the] award so as to shield that award from equitable division by the dissolution court." In *Liles* v. *Liles*, 289 Ark. 159, 711 S.W.2d 447 (1986), we held that a personal injury judgment based on a structured settlement, part of which had been received and part of which was to be received in the future, was marital property, citing *Goode* v. *Goode, supra*, again noting that *Lowrey* v. *Lowrey, supra*, no longer governs the question.

In 1987, the general assembly added an exception to the definition of "marital property" as follows: "Benefits received or to be received from a Workers' Compensation claim or personal injury claim when such benefits are for any degree of permanent disability or future medical expenses." Ark. Code Ann. § 9-12-315(b)(6) (Supp. 1987). By limiting the exception to portions of personal injury and workers' compensation claims for permanent disability or future medical expenses in the face of our decisions in the *Goode* and *Liles* cases, the general assembly has left other-

wise intact those decisions interpreting "marital property," as defined in § 9-12-315, to include workers' compensation and personal injury awards.

Mr. Bunt argues that the *Goode* case is distinguishable from the facts before us now because in that case a settlement offer had been made, while in Bunt's case the claim is nothing more than a "mere expectancy." He argues the *Liles* case is distinguishable because the personal injury claim there had been reduced to judgment. He cites our remark in the *Liles* case that the personal injury judgment there was "liquidated." We refer again to our rationale in *Goode* v. *Goode, supra.* To hold that a personal injury claim is marital property only to the extent that it has become "liquidated" would place the claimant in the position of manipulating the claim so as to "liquidate" it after divorce and thus have the power to determine whether it is included in marital property. Our remark in the *Liles* case, noted above, was made to show that the claim in the *Goode* case was clearly not liquidated and yet we held it to be marital property. In the *Goode* case we held that the claim was marital property, *i.e,* "property acquired by either spouse subsequent to the marriage," in the language of § 9-12-315. The argument that no definite value can be assigned to the claim until an award is made is no more persuasive here than it was in the *Goode* case. The fact that there had been an unaccepted offer of settlement was not the basis of our decision in the *Goode* case; thus we regard that holding as controlling here. To the extent Mr. Bunt acquired an enforceable right during the marriage to recover for personal injury, he acquired marital property. We note here, as we did in the *Goode* and *Liles* cases, that the chancellor is not required to divide any asset equally between the parties if reasons for not doing so are stated. *See* § 9-12-315(a)(1)(B).

## *2. Child custody*

This was undoubtedly a close case on the issue of custody of the two young children. There were good reasons not to award custody to either parent, as there was evidence that each had severe parenting problems which could affect the best interests of the children. Mrs. Bunt argues that the evidence preponderates in

her favor and, in the alternative, that the court should have awarded custody to Mr. Bunt's parents rather than to him.

We give the chancellor's findings great weight, especially in child custody cases. *Knight* v. *Deavers*, 259 Ark. 45, 531 S.W.2d 252 (1976). The final decree specified that the children are not to be removed from the home of the paternal grandparents until Mr. Bunt has completed a parenting class and filed a certificate of completion with the court. Assuring that the children would remain in the home of the grandparents, at least temporarily, was probably the best available immediate solution. Obviously jurisdiction was retained to act in the best interest of the children and to change the custody order if need be.

For her alternative argument, Mrs. Bunt cites *Bornhoff* v. *Thompson*, 237 Ark. 256, 372 S.W.2d 616 (1963), in which we approved a decree placing child custody with grandparents who, as in this case, were not parties to the action. However, there we noted that the grandparents were not only present in the court when the award was made, but that they had "subjected themselves to the jurisdiction" of the court. There is no such showing here. *See also Powell* v. *Woolfolk*, 233 Ark. 893, 349 S.W.2d 657 (1961).

That portion of the decree placing custody of the children with Mr. Bunt is affirmed; the portion holding the personal injury claim is not marital property is reversed, and the case is remanded.

HICKMAN, PURTLE & GLAZE, JJ., dissent.

TOM GLAZE, Justice, dissenting. The majority court holds a spouse's "unliquidated" personal injury claim is marital property, subject to distribution at the time of the parties' divorce. Because I do not believe such a holding is consistent with Arkansas's marital property law nor is supported by the prevailing view in other jurisdictions, I dissent.

While the parties in this appeal provide little research on the subject, my own limited research reveals only one other jurisdiction that has held a spouse's chose in action for personal injuries constituted property subject to equitable distribution in a divorce

proceeding. *See Heilman* v. *Heilman,* 95 Mich. App. 728, 291 N.W.2d 183 (1980). On the other hand, several jurisdictions have rejected the idea that an unliquidated claim—even if it could be characterized as property—is property that is susceptible of division at the time of divorce. *See Queen* v. *Queen,* 308 Md. 574, 521 A.2d 320 (1987) (court held due to the personal nature of the injuries giving rise to a permanent partial disability award, it could not conclude that the General Assembly intended a noninjured spouse to share in the compensation for the injured spouse's loss of future earning capacity representing a time period beyond the dissolution of the marriage); *McNevin* v. *McNevin,* 447 N.E.2d 611 (Ind. App. 1983) (court held that even if spouse's personal injury claim is classified as a property interest, it fails to qualify as marital property because it was not susceptible to division at the time of dissolution); *Fries* v. *Fries,* 288 N.W.2d 77 (N.D. 1980) (court held a pending personal injury claim is far too speculative to include in a property division of a marital estate).[1]

Aside from how other jurisdictions have treated the issue, I believe a close study of Arkansas's marital property law, Ark. Code Ann. § 9-12-315 (1987), reveals the General Assembly never intended that a contingent or unliquidated claim should be marital property. In construing § 9-12-315 (formerly Ark. Stat. Ann. § 34-1214 (Supp. 1985)), this court has held all marital property shall be distributed at the time a divorce decree is entered. *Forrest* v. *Forrest,* 279 Ark. 115, 649 S.W.2d 173 (1983). Obviously, a spouse's claim for personal damages is a mere expectancy, not susceptible of division. For example, in the

---

[1] None of the cases cited should be confused with those where a spouse's personal injury claim was settled or otherwise liquidated, so an award actually was received during the parties' marriage. Under these circumstances, the general rule clearly appears to be that such an award is marital property. *See* L. Golden, *Equitable Division of Property,* § 6.25 (1983); *Gan* v. *Gan,* 83 Ill. App. 3d 265, 404 N.E.2d 306 (1980); *Maricle* v. *Maricle,* 221 Neb. 552, 378 N.W.2d 855 (1985); *Nixon* v. *Nixon,* 525 S.W.2d 835 (Mo. Ct. App. 1985); and *Orszula* v. *Orszula,* 356 S.E.2d 114 (S.C. 1987). *Cf.,* however, *Amato* v. *Amato,* 180 N.J. Super. 210, 434 A.2d 639 (1981), *Brown* v. *Brown,* 100 Wash. 2d 729, 675 P.2d 1207 (1984); and *Johnson* v. *Johnson,* 346 S.E.2d 430 (N.C. 1986), wherein these jurisdictions have held a spouse's personal injury claim is not marital property, except certain components such as lost wages and medical expenses.

instant case, the appellee has filed no suit, no settlement has been offered and, indeed, no liability against a third-party tortfeasor has been established. Under such circumstances, how does a judge evaluate the spouse's claim under § 9-12-315(a)(1)(A), which requires the judge to consider certain factors when equitably distributing the parties' other property interests?

Other questions arise as well. What if the injured spouse ultimately loses on his or her claim, and instead, the opposing third party, by counterclaim, obtains a judgment against the injured spouse? Is the noninjured spouse, then, required to assume part of the judgment against the injured spouse, since the inception of the liability, i.e., the accident and resulting injury to the third-party claimants, occurred during the parties' marriage? Obviously, if unliquidated personal injury claims are now divisible as marital property, the trial court must retain jurisdiction to divide the proceeds, if any, that might be received by the injured spouse. That being true, what effect does such an award have on the other properties previously divided and distributed at the time the divorce decree was entered? Should the trial judge attempt to speculate as to the amount the injured spouse might expect to receive so as to insure the judge, using the required factors under § 9-12-315(a)(1)(A), is fair and equitable when dividing the parties' property at the time of the divorce? Also, should the judge estimate the amount of the injured spouse's potential award so the judge can more fairly decide if alimony should be awarded?

While the majority ignores the importance of answering such questions because they are not before the court, I believe to consider and to answer these questions serves to reveal why unliquidated or contingent claims of any nature should not be held marital property. In *Lowrey* v. *Lowrey*, 260 Ark. 128, 538 S.W.2d 36 (1976), the court, under prior statutory law, held that an unliquidated personal injury claim of a spouse was not property subject to division between divorcing parties. Later, the court in *Goode* v. *Goode*, 286 Ark. 463, 692 S.W.2d 757 (1985), overruled the *Lowrey* holding, and, in my view, the court clearly was wrong in doing so.

In conclusion, I note that the General Assembly, in enacting

Act 676 of 1987, has amended § 9-12-315(b) to except from the definition of marital property any benefits received or to be received from a workers' compensation claim or a personal inquiry claim when those benefits are for any degree of permanent disability or future medical expenses. Act 676 is obviously the General Assembly's response to this court's decision in *Goode*. While Act 676 will lessen the impact and effect of today's decision and the holding in *Goode*, the Act will not alleviate the problems and the litigation which will ensue as a result of the majority's holding. By allowing contingent claims to be characterized as marital property, we have only created more work and litigation for attorneys and the judicial system. At the same time, we have extended indefinitely the divorce process, which in most instances means extending existing strife and rift between the divorcing parties.

Because I believe the trial court was correct in declaring the appellee's personal injury claim was not marital property, I dissent from the majority opinion's holding.

HICKMAN and PURTLE, JJ., join in this dissent.